**Curtis WILLIAMS, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee (Plaintiff).**

No. 48S00–0010–CR–578.

Supreme Court of Indiana.

July 8, 2002.

Roberta Staten, Kansas City, MO, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

A jury found appellant Curtis Williams guilty of various offenses committed while breaking into Carolyn Smoots' apartment and threatening her with a handgun, and of being an habitual offender. Williams raises three issues on appeal: 1) whether the trial court erred by not defining "knowingly" and "intentionally" for the jury; 2) whether Williams' trial counsel was ineffective; and 3) whether Williams' convictions and sentences for intimidation and burglary violate Indiana's prohibition against double jeopardy. We affirm.

### Facts and Procedural History

On March 22, 2000, Carolyn Smoots and her husband Terrence, though separated, celebrated their wedding anniversary together. As they returned home to Carolyn's apartment, Troy Booker approached and warned Carolyn that Williams was looking for her and threatening to "shoot up the building." (R. at 175, 234–37.) As Carolyn and Terrence entered the building's back door, Carolyn saw Williams coming in the front door and heard gunshots fired from that direction. Carolyn and Terrence sought temporary refuge in a neighbor's upstairs apartment.

When they thought Williams was gone, the couple headed downstairs, but before they reached Carolyn's apartment Williams rushed back into the building. Carolyn heard another gunshot and attempted to enter her apartment and close the door. Williams prevented her from shutting him out and during the struggle Carolyn's ankle buckled, causing her to fall to the floor. Williams then entered the apartment, put a gun to her head, and threatened to shoot her. Terrence eventually persuaded the enraged Williams to leave the apartment without further injuring Carolyn.

Williams was charged with unlawful possession of a firearm by a serious violent felon as a class B felony, intimidation as a class C felony, criminal recklessness as a class D felony, burglary as a class A felony, and being an habitual offender. A jury found Williams guilty on all counts. The trial court sentenced Williams to concurrent terms of twenty years for possession of a firearm, eight years for intimidation, three years for criminal recklessness, and thirty years for burglary. It enhanced the burglary sentence by thirty years for the habitual offender finding, for an aggregate term of sixty years.

### I. Failure to Instruct

■ Williams first contends that the trial court failed to instruct the jury on the level of culpability required for burglary and possession of a firearm by a serious violent felon. He specifically argues that the court erred when it did not *sua sponte* instruct the jury on the definitions of "knowingly" and "intentionally."

■ A defendant who fails to object to the court's final instructions and fails to tender a set of instructions at trial waives a claim of error on appeal. *Sanchez v. State*, 675 N.E.2d 306 (Ind.1996). Williams' counsel did not tender an instruction defining "knowingly" and "intentionally," or object to its omission. He thus preserved nothing for appeal.

### II. Ineffective Assistance of Counsel

Williams next contends his attorney was ineffective within the meaning of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Williams maintains his attorney did not render effective assistance because his attorney failed to ensure that the jury received proper instructions. Additionally, Williams claims his attorney was ineffective because he did not engage in proper pre-trial preparation.

To prevail on an ineffective assistance of counsel claim, a defendant must establish both deficient performance and resulting prejudice. *Brightman v. State,* 758 N.E.2d 41 (Ind.2001). To prove deficient performance, the defendant must show errors serious enough to demonstrate that counsel was not functioning as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Saylor v. State,* 765 N.E.2d 535, 549 (Ind.2002).

■ *A. Instructions.* Williams claims that his trial attorney, Donald Hurst, "submitted no instructions to the Court, had not properly reviewed the instructions the State had submitted[,] and was wholly unprepared for this portion of the Williams defense." (Appellant's Br. at 19.) Contrary to Williams' assertion that his attorney submitted no instructions to the trial court, Hurst did submit an instruction on jury nullification. (*See* R. at 130, 466–69.) Hurst's specific objection to the trial court's instruction on jury nullification also contradicts Williams' assertion that Hurst did not review the instructions. (*See id.*)

■ As for whether defense counsel should have tendered instructions relating to culpability of the crimes, we note the trial court gave instructions on the elements of burglary and possession of a firearm by a serious violent felon. These informed the jury that guilt required a knowing or intentional state of mind.[1] The trial court also instructed the jury that the State had to prove each essential element of the crimes beyond a reasonable doubt. The court then properly explained this concept to the jury.

While we would expect further definitions for words of art such as "knowingly" and "intentionally," we can well imagine counsel deciding to focus on points likely to have more weight with the jury. Hurst chose to concentrate on attacking the reliability of key State witnesses by highlighting inconsistencies in their stories, and on challenging the credibility of the State's argument that Williams threatened to kill Carolyn merely because she refused to tell him the whereabouts of his sister. (R. at 429–36.) Measured against counsel's legitimate decision to emphasize issues such as these, failure to submit an instruction does not seem so serious an omission to overcome the *Strickland* presumption of adequate performance.

■ *B. Trial Preparation.* Williams also argues that his attorney was unprepared for trial in various respects.[2] He

---

1. Prior to the start of voir dire, the trial court did give the jury pool some preliminary information, including definitions of the terms "knowingly" and "intentionally." (R. at 96–100.) The court later noted, however, that not every person who served as a juror in Williams' trial heard these definitions. (R. at 119.) Accordingly, the court should have reread the instruction defining "knowingly" and "intentionally."

2. Two of these claims deserve short shrift. At one point in the trial, while Hurst explained the next stage of the trial to Williams, the trial judge suggested that Hurst give Williams a piece of paper that described a charged offense. (*See* Appellant's Br. at 21; R. at 461–62.) We fail to see error in this.

Williams also cites Hurst's statement that he had not seen Williams' criminal record and claims that Hurst was therefore unpre-

first maintains that Hurst's questioning of witnesses at trial was ineffective due to lack of pre-trial preparation. Williams argues that had Hurst deposed various witnesses, he could have impeached the State's case and thus created a reasonable doubt as to his guilt.

■ Counsel's failure to interview or depose State's witnesses does not, standing alone, show deficient performance. *Williams v. State*, 724 N.E.2d 1070, 1076 (Ind.2000). The question is what additional information may have been gained from further investigation and how the absence of that information prejudiced his case. *Id.*

Williams does not indicate what new information was available, much less how its absence impaired his case. (*See* Appellant's Br. at 18–25.) In fact, Hurst's performance at trial contradicts the charge that he was unprepared. Hurst challenged Booker's memory of the events and got him to admit he never saw Williams with a gun. (R. at 183–86.) He pointed out inconsistencies between Carolyn's testimony at trial and her pre-trial interviews. (R. at 285–86, 289.) He also impeached another State witness's testimony with conflicting previous statements. (R. at 220.) These instances support the *Strickland* presumption that Hurst was effective in his trial preparation.

■ Williams also claims that Hurst did not adequately prepare him for trial. His claim relies on a comment by the trial judge indicating that the jury would have acquitted Williams had he not testified. Williams maintains that had Hurst spent time with him before trial, Williams would not have been subjected to the "unmerci-

ful[ ]" harassment by the State during cross-examination. (Appellant's Br. at 20.)

The record paints a different picture. Williams testified on direct examination that he was at the apartment building on March 22, 2000, spoke with the victim that night, and ran from police sometime thereafter. (R. at 360–62.) On cross-examination, he changed his story and denied that he was at the complex on March 22nd, claiming instead that his version of events took place on March 18th. (R. at 378.) The State reacted by thoroughly attacking Williams' recollection of the events and their timing. (R. at 378–88, 392–98.)

Williams acknowledges that Hurst urged him not to testify at trial. (Appellant's Br. at 20; R. at 372, 562.) Moreover, based on Williams' answers on direct examination, Hurst likely had no way of knowing that Williams was about to change his own testimony so significantly. (*See* R. at 377–78.) Hurst seems to have done what he could to save Williams from himself.

■ Williams also faults Hurst's direct examination of him. He says Hurst's "questions were repeatedly object[ed] to" and Hurst was "unable to answer any of the objections with cogent offers of proof. . . ." (Appellant's Br. at 20.) Some of the objections, however, stemmed from Williams making hearsay statements. (*See, e.g.,* R. at 361.) The others arose because Williams wanted to testify about irrelevant matters. (*See, e.g.,* R. at 358–59, 370–74.) Hurst was not deficient because these objections were sustained.

■ Williams next complains that Hurst's motion for a continuance prior to the start of trial was not assertive enough. Immediately before the trial court read

pared for the enhancement stages of trial and failed to advise Williams of the ramifications of these proceedings. (Appellant's Br. at 21–22; R. at 456.) Williams does not explain

how this amounts to ineffective performance nor how this may have prejudiced him. This claim fails for lack of cogent argument.

preliminary instructions, Hurst moved for a continuance on the grounds that Williams claimed that Hurst was unprepared. Williams also wanted to hire private counsel.

Any motion to continue offered at such a moment was bound to fail, especially when, as the judge noted, the private attorney that Williams wanted to hire was in the courtroom but declined to enter an appearance until the judge ruled favorably on the matter. (R. at 116–17.) Again, we fail to see how Hurst was deficient.

Williams also faults Hurst for not informing the trial court that his habitual enhancement could have been reduced by ten years, relying on *Garrett v. State*, 602 N.E.2d 139 (Ind.1992). He overlooks the fact that the 1993 General Assembly amended the habitual offender statute and eliminated the language that was at issue in *Garrett*. *See* P.L. No. 164–1993, § 13, 1993 Ind. Acts 3851. The current statute does not contain a comparable provision. *See* Ind.Code Ann. § 35–50–2–8 (West 2000).

The contentions about Hurst's performance are inadequate to overcome the constitutional presumption of reasonable representation.

### III. Double Jeopardy

■ Finally, Williams contends that his convictions for intimidation as a class C felony and burglary as a class A felony violate Indiana's prohibition against double jeopardy. He argues that because the State used the evidence of Williams putting a gun to Carolyn's head both to convict him of intimidation as well as to support an element of burglary, the same facts support both convictions. Williams claims this violates the actual evidence test of the Indiana double jeopardy analysis.

■ Williams' argument is based on this Court's Article 1, section 14 analysis as laid out by *Richardson v. State*, 717 N.E.2d 32 (Ind.1999) and *Spivey v. State*, 761 N.E.2d 831 (Ind.2002). Two charged offenses violate Indiana's Double Jeopardy Clause when the essential elements of one offense also establish all the essential elements of a second offense. *Spivey*, 761 N.E.2d at 832. A violation may be proven by looking at either the statutory elements of the challenged crimes or the actual evidence used to convict the defendant of the challenged crimes. *Id.*

The State charged Williams with burglary as an A felony and intimidation as a C felony. A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary as a C felony. Ind.Code Ann. § 35–43–2–1 (West 2000). The charge is elevated to a class A felony when a victim suffers bodily injury. *Id.* § 35–43–2–1(2)(A). As applicable to this case, a person commits intimidation as a class A misdemeanor when the person "communicates a threat to another person, with the intent: (1) that the other person engage in conduct against the other person's will; (2) that the other person be placed in fear of retaliation for a prior lawful act. . . ." Ind. Code Ann. § 35–45–2–1(a) (West 2000). The charge may be enhanced to a class C felony when the person uses a deadly weapon during commission of the crime. *Id.* § 35–45–2–1(b)(2).

The facts supporting Williams' convictions for intimidation and burglary make it apparent that there is no double jeopardy violation. The essential elements of burglary included Williams' forced entry into Carolyn's apartment, causing Carolyn's ankle injury. When Williams broke into the apartment, the burglary was complete. Williams then put a gun to Carolyn's head—an act separate and distinct from the act that supported the burglary conviction. There is no double jeopardy viola-

tion when, as here, the same evidentiary facts establish less than all of the essential elements of the two challenged crimes.

### Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.