**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

APPELLANT PRO SE:

**HERMAN P. JOHNSON**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana



FILED
Apr 16 2013, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HERMAN P. JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1207-PC-606 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
The Honorable Jeffrey L. Marchal, Master Commissioner
Cause No. 49G06-0903-FA-34012

April 16, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Herman P. Johnson, *pro se*, appeals the post-conviction court's denial of his petition for post-conviction relief. Johnson raises ten issues, which we revise and restate as whether the court erred in denying Johnson's petition for post-conviction relief. We affirm.

## FACTS AND PROCEDURAL HISTORY

The relevant facts as discussed in Johnson's direct appeal follow:

> Johnson was forty-five years old and lived in Indianapolis. One day he went to the movies with his ten-year-old niece E.B. and his girlfriend Wanda. Afterward the three returned to Johnson's house. E.B. and Johnson began playing chess. Wanda left after ten or fifteen minutes. E.B. and Johnson then decided to play a card game. E.B. went to the back room to look for a deck of cards, and Johnson followed her.
>
> While they were in the back room, Johnson lifted E.B. from behind, pulled up her shirt and bra, and touched her breast. Wanda soon returned. Johnson instructed E.B. not to tell anyone that he had picked her up. E.B. came to the front of the house to see Wanda. E.B. did not tell her what had happened. Wanda left again five minutes later.
>
> E.B. continued to look for cards. She could not find any and returned to the back room. Johnson picked E.B. up again and touched her vagina over her clothing. E.B. then went to another room to resume her search. She again found no cards and returned to the back room. Johnson came in and placed E.B. on the bed. Johnson pulled down her pants and underwear, inserted his finger into her vagina, and moved his finger "[i]n and out." Tr. p. 26. E.B. told Johnson that he was hurting her, but Johnson said he did not care. E.B. started kicking. Johnson pinned her down and began licking the inside of her vagina.
>
> Soon E.B.'s mom called, and E.B. spoke to her briefly on the phone. At some point E.B. and Johnson left and went to Safeway. They also stopped at a laundromat so E.B. could go to the bathroom. Johnson gave E.B. his cell phone before she went in. E.B. called her mom while in the restroom and told her what Johnson had done. E.B. and Johnson then returned to the house, and E.B.'s mother was there when they arrived. E.B. left with her mother. They picked up E.B.'s father, and E.B. explained to her parents what had happened. Authorities were ultimately notified.

Johnson v. State, No. 49A02-0908-CR-819, slip op. at 2-3 (Ind. Ct. App. April 23, 2010).

The State charged Johnson with child molesting as a class A felony, child molesting as a class C felony, and criminal confinement as a class C felony. Id. at 3. On May 26, 2009, Johnson's counsel requested a speedy trial. The court held a jury trial on July 22, 2009. A jury found Johnson guilty of child molesting as a class A felony and as a class C felony and not guilty of criminal confinement. Id. at 6. The court sentenced Johnson to forty-five years for child molesting as a class A felony and eight years for child molesting as a class C felony and ordered the sentences to be served concurrent with each other.

On direct appeal, Johnson argued that the trial court erred in denying his Batson challenge and that the evidence was insufficient to sustain his convictions. Id. This court affirmed. Id. at 11.

On July 31, 2010, Johnson filed a petition for post-conviction relief.[1] In February and March 2012, the court granted Johnson's motions for leave to amend his petition.[2] On April 12, 2012, the court held a hearing on Johnson's petition. At the hearing, Johnson's trial counsel testified. On July 16, 2012, the court denied Johnson's petition.

## DISCUSSION

Before discussing Johnson's allegations of error, we note that although Johnson is proceeding *pro se*, such litigants are held to the same standard as trained counsel and are

---

[1] The record does not contain a copy of Johnson's petition for post-conviction relief. We direct Johnson's attention to Ind. Appellate Rule 50(A)(2)(f), which requires an appellant's appendix to include "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal."

[2] The record does not contain a copy of Johnson's amended petition.

3

required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). Id. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Id. In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

Johnson raises a number of issues on appeal. To the extent that Johnson fails to put forth a cogent argument and cite to authority, we conclude that Johnson's arguments are waived.[3] See, e.g., Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that

---

[3] As an example, Johnson argues that "[d]irect appeal counsel using insufficient evidence as a issue on direct appeal was ineffective assistance of counsel []for the lawyer truly knows law and that the direct appeal court does not reweigh evidence nor judge the credibility of the witnesses is a clear fact that the evidence was not ruled on so how can the State use Res Judicata?" Appellant's Brief at 17. Johnson also contends that his "counsel's failure to challenge this statute is the direct result of an ongoing conspiracy between Indiana's public defenders, prosecutors, child protection service agencies, and law

4

the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

To the extent that Johnson raises the issues of whether the evidence was sufficient and whether the post-conviction court reached the wrong conclusion that the State's race neutral justification for its strikes of the only two African American panelists passed the third Batson step, his arguments fail. On direct appeal, Johnson raised the issues of sufficiency of the evidence and whether the trial court erred in denying his Batson challenge. This court concluded that the evidence was sufficient and that the trial court did not err by accepting the State's explanations, finding no purposeful discrimination, and denying Johnson's Batson challenge. Consequently, these issues are barred by the doctrine of *res judicata*.[4] See Ward v. State, 969 N.E.2d 46, 51 (Ind. 2012) ("Issues available on direct appeal but not raised are waived, while issues litigated adversely to the defendant are res judicata."), reh'g denied. To the extent that Johnson raises other freestanding claims of error, these claims also fail. See Reed v. State, 866 N.E.2d 767, 768 (Ind. 2007) (holding that the propriety of a defendant's sentence is not properly questioned through collateral proceedings and that only issues not known at the time of the original trial or issues not available on direct appeal may be properly raised through

---

enforcement agencies, as evidenced by the disproportionate number of males that are charged with child abuse," but does not develop the argument. Id. at 35.

[4] Johnson does not present any evidence related to his Batson claim that was not presented at trial.

5

postconviction proceedings); <u>Sanders v. State</u>, 765 N.E.2d 591, 592 (Ind. 2002) (holding that in "post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal" and that it is wrong to review the petitioner's fundamental error claim in a post-conviction proceeding); <u>Lambert v. State</u>, 743 N.E.2d 719, 726 (Ind. 2001) (holding that post-conviction procedures do not provide a petitioner with a "super-appeal" or opportunity to consider freestanding claims that the original trial court committed error and that such claims are available only on direct appeal), <u>reh'g</u> <u>denied</u>, <u>cert.</u> <u>denied</u>, 534 U.S. 1136, 122 S. Ct. 1082 (2002). We will address Johnson's arguments to the extent that he raises issues within the context of his claim of ineffective assistance.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. <u>Ben-Yisrayl v. State</u>, 729 N.E.2d 102, 106 (Ind. 2000) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), <u>reh'g</u> <u>denied</u>), <u>reh'g</u> <u>denied</u>, <u>cert.</u> <u>denied</u>, 534 U.S. 830, 122 S. Ct. 73 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. <u>French v. State</u>, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> A reasonable probability is a probability sufficient to undermine confidence in the outcome. <u>Perez v. State</u>, 748 N.E.2d 853, 854 (Ind. 2001).

6

"[L]ogic dictates that 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" Hilliard v. State, 609 N.E.2d 1167, 1169-1170 (Ind. Ct. App. 1993) (quoting Strickland, 466 U.S. at 696, 104 S. Ct. at 2069)). Failure to satisfy either prong will cause the claim to fail. French, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Morgan v. State, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." Williams v. State, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. Clark v. State, 668 N.E.2d 1206, 1211 (Ind. 1996), reh'g denied, cert. denied, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." Burr v. State, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." Whitener v. State, 696 N.E.2d 40, 42 (Ind. 1998).

Johnson argues that his trial counsel was ineffective for: (1) failing to investigate the lack of medical evidence to support the allegations and failing to depose certain witnesses; (2) failing to file a motion to dismiss based upon his speedy trial rights; (3)

7

failing to advise or explain the credit time classifications; (4) failing to file a motion to dismiss the charging information; and (5) not objecting to E.B.'s testimony regarding digital penetration.

1.      Investigate and Depose Witnesses

Johnson argues that "[h]ad counsel investigated and called important fact witnesses and medical experts to testify at trial their testimony would have rebutted the prosecutions [sic] already weak case." Appellant's Brief at 8. Johnson asserts that "[h]ad counsel done deposition of Paula Ballard, E.B. and Wanda R. Stubbs when their Statements in Court . . . he would have had something to compare their statement to, like the Affidavit of the detective and the State Prosecutor." Id. at 9. The State argues Johnson has not provided any evidence of specific information that depositions or other additional investigation would have uncovered.

"Counsel's failure to interview or depose State's witnesses does not, standing alone, show deficient performance." Williams, 771 N.E.2d at 74. "The question is what additional information may have been gained from further investigation and how the absence of that information prejudiced his case." Id. At the post-conviction hearing, Johnson did not present evidence related to medical experts or Paula Ballard, E.B., and Wanda Stubbs. We also observe that Johnson's trial counsel testified that he did not recall whether he performed depositions, that he was no longer with the public defender agency, and that he was not asked to bring his file with him to the hearing. Trial counsel also testified that his general practice was to ask for a continuance if the defendant agreed to that and that "[s]ometimes if I ask for additional time to do a deposition, I may decide

8

ultimately that I don't need to do one, after further investigation." Post-Conviction Transcript at 7-8. Under the circumstances, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

2.      Speedy Trial

Johnson appears to argue that his trial counsel was ineffective for not asking the court to dismiss the case based upon Ind. Criminal Rule 4(B). The State argues that Johnson was tried within the seventy-day period and "[a]s Johnson's early-trial request under Rule 4(B) was honored, there was no error to which [his trial counsel] could have objected." Appellee's Brief at 14.

Ind. Criminal Rule 4(B) provides that "[i]f any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion . . . ." The record reveals that Johnson's counsel requested a speedy trial on May 26, 2009. The court held a jury trial on July 22, 2009, which was within seventy days of Johnson's request for a speedy trial. Thus, we cannot say that Johnson's trial counsel was ineffective on this basis.

3.      Explanation of Credit Time

Johnson argues that his counsel was ineffective for failing to explain the differences with respect to credit time for credit restricted felons. The State argues that Johnson's trial counsel advised his clients of their potential credit classifications as a general practice and that Johnson did not present any evidence that his trial counsel did

9

not inform him of his credit classification. The State also argues that Johnson has not shown how the presence or lack of an advisement about his credit-time status could or would have affected the outcome of his case.

During the post-conviction hearing, Johnson stated: "I'm also testifying to my sentence being inadequate because based upon the credit restricted felony." Post-Conviction Transcript at 28. However, Johnson does not point to evidence that his trial counsel failed to inform him of his credit classification. When Johnson asked his counsel the reason for not informing him of credit restricted felonies, Johnson's trial counsel testified:

> Uh Mr. Johnson, I don't recall that specifically but my typical practice is that I tell the client what the plea offer is and since I've tried dozens of these types of cases in this court, I always – my practice is to advise the client of any type of credit class restriction. In your type of case, it's incredibly important because of the fact that you're not going to get two for one credit time. So my typical practice is to advise a person of that on the plea offer. Then the client has to make the decision on whether they want to accept that plea or go to trial.

Id. at 9. Johnson's trial counsel later stated: "To suggest that I didn't advise you or anyone else is nonsense." Id. at 10. Under the circumstances, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

4.    Sufficiency of Charging Information

Johnson appears to argue that his trial counsel was ineffective for failing to file a motion to dismiss the charging information challenging the absence of criminal intent in the charging information. The State argues that the charges mirror the statutory language

10

and that Johnson has not shown how the wording of the information hampered his ability to understand the nature of the charge or to prepare a defense.

Ind. Code § 35-34-1-2(d) provides that "[t]he indictment or information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "Where an information tracks the language of the statute it will usually withstand a motion to dismiss unless the statute defines the crime only in general terms." Taylor v. State, 614 N.E.2d 944, 948 (Ind. Ct. App. 1993), trans. denied. Here, the language of the charging information substantially tracked the language of the statute.[5] Further, Johnson does not explain how the wording of the charging information prejudiced him. We cannot say that reversal is warranted on this basis. See id. (observing that each count of the charging information tracked and mirrored the language of the child molestation statute, holding that the information properly informed the defendant, and holding that the defendant had not shown how the wording of the information hampered his ability to understand the nature of the charge or to prepare a defense).

5.     Objection to Certain Evidence

---

[5] With respect to child molesting as a class A felony, Count I alleged that Johnson "being at least twenty-one (21) years of age, did perform or submit to deviate sexual conduct, an act involving a sex organ, that is: vagina of [E.B.] and the mouth of [Johnson], with [E.B.], a child who was then under the age of fourteen (14) years, that is: ten (10) years of age." Appellant's Appendix at 37. Ind. Code § 35-42-4-3 provides that "[a] person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if . . . it is committed by a person at least twenty-one (21) years of age." With respect to child molesting as a class C felony, Count II alleged that Johnson "did perform or submit to any fondling or touching with [E.B.], a child who was then under the age of fourteen (14) years, that is: ten (10) years of age, with intent to arouse or satisfy the sexual desires of [E.B.] and/or the sexual desires of [Johnson]." Id. at 37-38. Ind. Code § 35-42-4-3 provides that "[a] person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony."

11

In the summary of the argument section of his brief, Johnson states that his trial counsel was ineffective for failing to object to E.B.'s "making allegations of digital penetration at trial, when it was not in the charging information." Appellant's Brief at 6. Johnson later references E.B.'s testimony that he digitally penetrated her and argues that his counsel "was to object." Id. at 18. Johnson asserts that there must be consistency between the allegation charged and the proof adduced and that it was fundamental error to convict him of an offense for which he was not charged.

The State argues that Johnson's trial counsel made the jury aware of the possible inconsistency in E.B.'s testimony and her earlier statements, that an objection would not have been sustained under Ind. Evidence Rule 404(b), and that Johnson has not demonstrated prejudice. The State asserts that E.B.'s testimony about digital penetration was relevant because it helped prove that Johnson touched E.B. with the intent to arouse his or her sexual desires. The State contends that the jury's verdict on the class C felony would "probably have been the same without E.B.'s testimony about digital penetration, because E.B. also testified that Johnson touched her breast underneath her clothes." Appellee's Brief at 19.

We observe that Johnson does not set forth any evidentiary rule that his counsel should have raised in his objection. To the extent that Johnson attacks his trial counsel's failure to object, we observe that such a decision may have been a reasonable trial strategy, and trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness. Autrey v. State, 700 N.E.2d 1140, 1141 (Ind.

12

1998). "Strategy to reach the overall goal may on occasion suggest bypassing other objections." Hicks v. State, 557 N.E.2d 677, 679 (Ind. Ct. App. 1990). As previously mentioned, we will not lightly speculate as to what may have been an advantageous trial strategy, as counsel should be given deference in choosing a strategy that, at the time and under the circumstances, seems best. Whitener, 696 N.E.2d at 42. Generally, where the petitioner does not call trial counsel as a witness the post-conviction court is justified in inferring that trial counsel would not have corroborated the allegations of ineffective counsel. Owens v. State, 464 N.E.2d 1277, 1279 (Ind. 1984).

At the post-conviction hearing, Johnson did not specifically ask his trial counsel why he did not object to E.B.'s testimony that Johnson digitally penetrated her vagina. Further, as pointed out by the State, at trial Johnson's counsel cross-examined Indianapolis Police Detective Julie Dutrieux, the detective assigned to the case, and Detective Dutrieux indicated that she had not heard the allegation of digital penetration until E.B. testified at trial. Johnson's counsel later emphasized the fact that E.B. did not mention the digital penetration before trial. During closing argument, counsel stated: "And only today does [Detective Dutrieux] find out, and this case allegedly happened some time ago, only today it's a surprise to her that there has been digital penetration alleged. Now why wasn't that brought up earlier?" Trial Transcript at 147. Under the circumstances, we cannot say that Johnson has demonstrated deficient performance and prejudice.

For the foregoing reasons, we affirm the post-conviction court's denial of Johnson's petition for post-conviction relief.

13

Affirmed.

RILEY, J., and BRADFORD, J., concur.