

**FILED**

Sep 26 2016, 9:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bart M. Betteau
Betteau Law Office, LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jon A. Arnold,

*Appellant-Petitioner*,

v.

State of Indiana,

*Appellee-Respondent*.

September 26, 2016

Court of Appeals Case No.
88A01-1603-PC-677

Appeal from the Washington
Circuit Court

The Honorable Larry W.
Medlock, Judge

Trial Court Cause No.
88C01-1506-PC-329

**Brown, Judge.**

[1] Jon A. Arnold appeals the denial of his petition for post-conviction relief. He raises several issues for our review, which we consolidate and restate as whether the post-conviction court erred in denying his petition for relief. We affirm.

## *Facts and Procedural History*

[2] In November 2008, the State charged Arnold with buying timber without a registration certificate as a class D felony under cause number 88C01-0811-FD-181 ("Cause No. 181"). The information referenced Ind. Code § 25-36.5-1-10 and alleged that Arnold did "engage in the business of timber buying without securing a registration, and while having a prior unrelated conviction for an offense under this section."[1] Petitioner's Exhibit 2. In September 2009, Arnold pled guilty to purchasing timber without securing a registration certificate as a class A misdemeanor, and the court sentenced him to one year, all of which was suspended.[2]

---

[1] In 2008, Ind. Code § 25-36.5-1-10 provided:

A person who:

(1)     engages in business as a timber buyer without securing a registration or in violation of this chapter; or

(2)     refuses to permit inspection of the person's premises, books, accounts, or records as provided in this chapter;

commits a Class A misdemeanor. However, the offense is a Class D felony if the person has a prior unrelated conviction for an offense under this section.

Ind. Code § 25-36.5-1-10 (eff. Jul. 1, 2001) (subsequently amended by Pub. L. No. 158-2013, § 292 (eff. Jul. 1, 2014) (substituting "Level 6 felony" for "Class D felony")).

[2] At the post-conviction hearing, the court took judicial notice of the probable cause affidavit and the guilty plea hearing. The record does not include the guilty plea hearing transcript and probable cause affidavit, although the court quotes portions of each in its orders. The Indiana Supreme Court has stated that, while Ind. Evidence Rule 201(b)(5) is silent on whether a court must enter a document of which it takes judicial

[3]   On June 24, 2015, Arnold filed a petition for post-conviction relief alleging that he was denied the effective assistance of counsel, that but for his counsel's errors he would not have pled guilty and insisted on going to trial, and that his counsel overlooked defenses that would have likely changed the outcome of the proceeding.

[4]   On March 3, 2016, the post-conviction court held a hearing at which Arnold testified and presented exhibits and the testimony of his trial counsel. Arnold requested the court to admit the affidavits of Chad Anderson and Connie Burton, and the court admitted the affidavits after striking several paragraphs on the State's objection that the paragraphs contained legal conclusions. In her affidavit, Burton stated in part that no written contract existed for the sale of

---

notice into the record, the best practice is to enter the particular documents into the record. *See Horton v. State*, 51 N.E.3d 1154, 1160 (Ind. 2016). In its March 10, 2016 order denying Arnold post-conviction relief, the court stated that the following exchange occurred at the guilty plea hearing:

> [Trial counsel]:
>> Jon, did you purchase some timber in Washington County, Indiana?
>
> [Arnold]:
>> Yes.
>
> [Trial counsel]:
>> And at that time you did not have a valid license to do so in Indiana, is that correct?
>
> [Arnold]:
>> That's right.
>
> [Trial counsel]:
>> And you knew that your license wasn't valid and you didn't, you weren't working on somebody's else's license either, is that correct?
>
> [Arnold]:
>> That's correct.

Appellant's Appendix at 9.

any trees; that her agreement with Arnold was that he would "cut the trees and after all bills were paid, the profits [would be] split on a 50/50 basis"; that "[a]t the time the agreement was made for Jon Arnold to cut the trees, [she] did not know exactly how many trees were to be harvested" and "Arnold was simply to cut all harvestable trees in a predetermined area." Petitioner's Exhibit 4. Burton further stated that she did not know how much money she would receive; that "[a]t the time of the agreement, Jon Arnold expressed that he was unsure as to exactly how many trees would be cut or what the proceeds would be"; that no money changed hands between herself and Arnold "until after the trees were bought by the sawmill"; and that she was paid exactly as she should have been pursuant to their agreement. *Id.* Anderson's affidavit stated in part that Burton was his mother.

[5] Arnold's trial counsel testified "we live in a small community and I have known Jon Arnold for some time and he has known me and I always knew him as a timber cutter/timber buyer," that "it seemed obvious on the face that this gentleman whom I already knew, uh, did not have a license to purchase timber," and "I assumed and today it appears to me wrongly, uh, that he was guilty of the crime charged." Transcript at 13. Trial counsel testified "my opinion has changed and I wished I had done it differently and advised Mr. Arnold differently at the time." *Id.* at 14. Trial counsel also testified that he did not think Arnold is a well-educated person.

[6] On cross-examination, Arnold's trial counsel stated that he would have received and reviewed the probable cause affidavit and a copy of Arnold's

recorded statement to a conservation officer. When asked whether Arnold "admitted to the conservation officer that what he did was illegal," trial counsel replied: "I believe that Mr. Arnold, at that time, operated under the same illusion that I did that unless you had the piece of paper that said, uh, licensed timber buyer that you, uh, you were guilty of the crime, uh, on it's [sic] face." *Id.* at 16-17. When asked "you said he was under an illusion at the time, you believed," trial counsel testified "because neither [Arnold] nor I did the analysis or even understood that, that analysis was available with respect to who was a timber buyer and who was not. Because his reputation is he, he buys and sells and cuts logs and I, I just assumed that's who he was." *Id.* at 17. He also testified "the analysis that's been done by [Arnold's post-conviction counsel] [ ] I did not do." *Id.* Trial counsel indicated that Arnold was initially charged with a felony, and when asked "[s]o, having a prior conviction and admitting to the officer that what he was doing was illegal you still got a misdemeanor agreement in that case," trial counsel answered "[w]e negotiated an agreement and resolved the case, yes." *Id.* at 18. He further testified: "It appears to me from reading the documents that purchasing on shares so that no interest in property transfers between the, uh, logger and the landowner does not fit the statute." *Id.*

[7] Arnold testified that Chad Anderson had asked him to cut some trees on his mother's property and sell them to the sawmills, that he said that he would "do it on a fifty/fifty deal," and that it was probably fewer than fifty trees. *Id.* at 21. When asked "[w]hen the conservation officer came up to talk to you about it

did you tell him immediately that, oh, as Ms. Campbell said, oh, I'm guilty, I committed a crime," Arnold stated "[y]eah, I probably did, I, I mean, I don't know for shore [sic]," "I been in a bigger business in the past," and "you know, I, so, I normally bought trees so, I guess I figured that, you know, I probably had to have a (Inaudible), you know." *Id.* at 21-22. Arnold indicated that he had previously been found guilty of tree buying without a license in Scott County and that, at that time, he had a sawmill, bought trees, and "wrote them a check for the trees or there was a certain amount . . . [u]p front." *Id.* at 22. He testified that, after that, he left the sawmill business, "went to doing small little jobs like this . . . for the neighbors basically to . . . cut just a few trees and sell them to other mills," and did the work "[o]n percentage." *Id.* at 22-23. When asked "[d]id you think at the time the way you were doing it required you to have a license on shares," Arnold answered "no, I didn't figure I needed the license on the shares." *Id.* at 23. When asked why he decided to plead guilty, Arnold testified "I just thought it would be a quick and easy deal, it would be done and over with, you know. And pay 'em a fine and, and such as that." *Id.* at 23-24. When asked "what did [trial counsel] tell you about," Arnold answered "[p]retty much told me the same thing" and "[h]e knew how the system would worked [sic] and would just take care of it that way." *Id.* at 24. When asked if his trial counsel ever discussed the legal definitions of tree cutter or tree buyer, ever indicated that he might have defenses, or indicated that he was not guilty of the offense, Arnold answered "[n]o, sir." *Id.*

[8] On cross-examination, Arnold indicated that he had been in the business for a long time. When asked if True Dimensions Hardware, Inc., was his business, Arnold answered he "was part owner, I was, yes." *Id.* at 25. When asked "And the Jon Arnold Lumber Company," "And Jon Arnold Logging," and "Jon Arnold Lumber," Arnold replied "Yes, ma'am." *Id.* at 25-26. When asked "so, you've had those separate logging business over the years," Arnold answered affirmatively. *Id.* at 26. He indicated that he had previously had a license to buy timber and that he "had it off and on over the years." *Id.* at 27. When asked if his license was expired when he entered the guilty plea, he answered that he believed so. On re-direct, Arnold indicated he had a high school education and no legal training. The State requested the court to take judicial notice of the probable cause affidavit and the plea hearing, and the court did so.

[9] Arnold's post-conviction counsel argued that Arnold was a timber cutter and not a timber buyer, that he was not required to have a license, and that Arnold was not in a position to know whether or not he was, in fact, guilty of the offense. His counsel noted that it was his trial attorney's responsibility to advise him about the law, and that trial counsel "wasn't able to provide that legal analysis that was really . . . the crux of this." *Id.* at 32. In response, the State argued that Arnold told the conservation officer that he knew what he did was illegal, that he had a conviction for buying timber without a license in the past, and that he was well versed in what was required of him. The State contended that "when you look at the definition of a timber buyer and buying . . . he meets

the definitions." *Id.* at 34-35. The State also asserted that, at the time, the judge, prosecutor, defense attorney, and defendant all believed Arnold committed a crime, that while trial counsel was gracious to talk about how he maybe did not examine those issues, the burden is on Arnold to show that he would have a likelihood of success at his argument and Arnold had not demonstrated a likelihood of success.

[10] The court raised an issue regarding Burton's neighbor, Jackson Warren, and Arnold testified that there "was in question whether we'd got over the line or not right there," that Warren believed that two trees were on his property, that Arnold did not believe they were on Warren's property but he paid Warren for those trees, and that he never separated the trees from the Burton timber. *Id.* at 39. Arnold indicated that he was not charged with a timber theft.

[11] The court issued an order dated March 10, 2016, denying Arnold's petition for post-conviction relief. The order states: "The Court finds that Jon A. Arnold did not purchase timber without a license from Connie Burton. However, the Court does find that pursuant to Mr. Arnold's testimony at the PCR hearing he did purchase timber from Jackson Warren without a license. Justice was served." Appellant's Appendix at 9-10. On April 1, 2016, the State filed proposed findings of fact and conclusion of law.

[12] The court issued findings of fact and conclusions of law dated April 11, 2016, which provided in part:

FINDINGS OF FACT

1.	The Court took judicial notice of the plea and sentencing hearing, as well as the probable cause affidavit from [Cause No. 181].

* * * * *

3.	[Arnold] filed the petition for post conviction relief to challenge conviction in [Cause No. 181] only after having been charged in 88D01-1504-F6-213 with Buying Timber without a Registration Certificate, Level 6 felony, Theft, Level 6 felony, and Trespass, Class A misdemeanor, which is still pending.

4.	[Arnold] admitted under oath at the plea hearing in [Cause No. 181] that on or about September 24, 2008, in Washington County, Indiana, he engaged in the business of timber buying without securing a registration.

5.	[Arnold] admitted under oath at the plea hearing in [Cause No. 181] that he was not working under someone else's license when he purchased the timber in Washington County, Indiana.

* * * * *

8.	[Arnold's] plea of guilty was made knowingly, intentionally and voluntarily.

9.	[Arnold] was represented, prior to and at the time of his plea, by [Arnold's trial counsel], who was hired by [Arnold].

10.	[Trial counsel] testified in this matter that his performance was deficient, however that is only accurate if [trial counsel] incorrectly interpreted the law stated in I.C. 25-36.5-1, et. seq., which the Court finds that he did not.

11.	[Arnold's] attorney filed a discovery request and received the discovery response prior to entry of the plea in [Cause No. 181].

12. The probable cause affidavit made available to the petitioner's attorney in assessing the criminal charges in [Cause No. 181] indicated:

a. that [Arnold] engaged in buying timber from Jackson Warren while not having a buyer's license when he knew he was required to, additionally the petitioner admitted during the post-conviction hearing he had paid Jackson Warren for timber he had harvested from Jackson's real property.

b. that [Arnold] admitted to the investigating officer that he had engaged in logging the property of Connie Burton and sold three loads of logs to the Worley saw mill, while not having a buy's [sic] license when he knew he was required to;

c. that [Arnold] admitted to the investigating officer that he had a prior conviction for buying timber in Scott County;

d. that [Arnold] admitted to the investigating officer that he had previously held a registration certificate allowing him to be a timber buyer, but that it was no longer valid;

e. that [Arnold] admitted to the investigating officer that he knew it was illegal to purchase timber without a license, but did not know his prior conviction made the charge a felony;

f. that [Arnold] admitted to the investigating officer that he had written a check to Connie Burton for timber on September 9, 2008 for $1,000.00, as well as cash;

g. that [Arnold] admitted to the investigating officer that he had sold the timber he had logged from the

Connie Burton property to the Worley saw mill in Pekin, Indiana for $3,500.00;

h.    that [Arnold] profited financially from his transaction with Connie Burton;

i.    that [Arnold] was a "timber buyer", as described in I.C. 25-36.5-1-1;

j.    that Connie Burton was a "timber grower", as described in I.C. 25-36.5-1-1;

k.    that the transaction between Connie Burton and the petitioner was for "timber", as described in I.C. 25-36.5-1-1;

13.    [Arnold] gave a recorded statement to the investigating officer, which was made available to [trial counsel] prior to the plea hearing, in which [Arnold] admitted that he acted as a timber buyer while not having a registration certificate and that he knew what he was doing was wrong.

14.    [Trial counsel] negotiated a plea for [Arnold] whereby he was given the privilege of probation on a misdemeanor conviction in lieu of the felony he was charged with.

15.    [Arnold] could have been convicted of a Class D felony based upon his prior conviction Buying Timber without a Registration Certificate, in violation of I.C. 25-36.5-1-10, from Scott County, Indiana, in 72C01-0004-CF-27, therefore he received a substantial benefit from the plea agreement.

* * * * *

20.    [Trial counsel's] performance did not fall below an objective standard of reasonableness.

* * * * *

## CONCLUSIONS OF LAW

\* \* \* \* \*

3.      Labor expended in harvesting "timber" or arranging the sale of harvested "timber" can be deemed "value" or "consideration", as stated in the definition of "buying" in I.C. 25-36.5-1-1.

\* \* \* \* \*

15.      [Arnold] has not shown that there was a reasonable probability of success at trial in pursuing this issue. *Segura* [*v. State*], 749 N.E.2d [496,] 503 [(Ind. 2001)].

\* \* \* \* \*

19.      Petitioner has failed to meet his burden on any issue raised in his petition. The law is with the State and against the Petitioner.

*Id.* at 18-23.

### *Discussion*

[13]      Before discussing Arnold's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached

by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[14] Arnold claims that his trial counsel was ineffective. Generally, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[15] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997).

[16] Arnold asserts that his trial counsel was ineffective as he failed to recognize that Arnold was innocent because the criminal statute did not prohibit his actions. In particular, he argues that he was not "a timber buyer because he never acquired an ownership interest in Burton / Anderson's timber." Appellant's Brief at 6. He argues that he was only a timber cutter, contracted to provide a service of cutting down trees for a fee, "not unlike persons in this State who pick blueberries or bale hay and get paid by the amount picked or baled; no title to the blueberries or hay ever passes." *Id.* at 7. Arnold contends that if he had been told he was innocent, he would not have pled guilty and would not have insisted on going to trial.

[17] The State maintains that Arnold's actions satisfied the definition of a timber buyer and that Arnold's assertion that he was not a buyer because he never acquired an ownership interest in the timber is contradicted by his admission to

the conservation officer that he paid Burton. The State argues that Arnold has not shown that the outcome of the trial would have been different had the case proceeded to trial.

[18] Because Arnold was convicted pursuant to a guilty plea, we analyze his claims under *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). *Segura* categorizes two main types of ineffective assistance of counsel cases. *Smith v. State*, 770 N.E.2d 290, 295 (Ind. 2002). The first type is where the defendant's lawyer fails to advise the defendant on an issue that impairs or overlooks a defense, and the second is where the defendant's lawyer incorrectly advises the defendant as to penal consequences. *Id.* Arnold raises the first type of issue, claiming that his trial counsel failed to evaluate whether he was engaged in the business of buying timber and failed to advise him that he could have been found not guilty. *See Soucy v. State*, 22 N.E.3d 683, 685-686 (Ind. Ct. App. 2014) (the petitioner's claim of actual innocence fell within the first category of *Segura*).

[19] In *Segura,* the Court held "in order to establish that the guilty plea would not have been entered if counsel had performed adequately, the petitioner must show that a defense was overlooked or impaired and that the defense would likely have changed the outcome of the proceeding." 749 N.E.2d at 499. The Court stated that "in the case of claims related to a defense or failure to mitigate a penalty, it must be shown that there is a reasonable probability that a more favorable result would have obtained in a competently run trial." *Id.* at 507. If a petitioner is convicted pursuant to a guilty plea "and later claims that his counsel rendered ineffective assistance because counsel overlooked or impaired

a defense, the petitioner must show that a defense was indeed overlooked or impaired and that the defense would have likely changed the outcome of the proceeding." *Maloney v. State*, 872 N.E.2d 647, 650 (Ind. Ct. App. 2007).

[20] The Timber Buyers Registration Act (the "Act"), found at Ind. Code §§ 25-36.5-1, was enacted to protect owners of land containing standing timber referred to as timber growers. *Roberts v. Voorhees*, 453 N.E.2d 342, 343 (Ind. Ct. App. 1983). The provisions of the Act operate to protect the timber grower in two ways. *Id.* Primarily, the Act insures that a timber grower will be paid for any timber sold to a registered timber buyer. *Id.* A secondary goal of the Act is to protect the timber grower from damage to the timber grower's land resulting from improper logging methods. *Id.* "The goals of the [Act] are met by requiring all persons along the chain of commerce involved in the removal of timber be registered." *Id.* "This includes, timber buyers, their agents and sub agents." *Id.* at 344. *See* Ind. Code §§ 25-36.5-1-2 (registration of timber buyers), -6 (issuance of registration certificates), -15 (issuance of an agent's license). "These parties are required to file a registration and bond with the Department of Natural Resources." *Roberts*, 453 N.E.2d at 344.

[21] Ind. Code § 25-36.5-1-1 defines certain terms in the Act and provides in part:

> "Person" means an individual, partnership, firm, association, business trust, limited liability company, or corporation.
>
> * * * * *
>
> "Timber buyer" means a person engaged in the business of buying timber from timber growers for sawing into lumber,

processing, or resale, but does not include a person who occasionally purchases timber for sawing or processing for his own use and not for resale.

"Timber grower" means the owner, tenant, or operator of land in this state who has an interest in, or is entitled to receive any part of the proceeds from, the sale of timber grown in this state and includes persons exercising lawful authority to sell timber for a timber grower.

"Department" means the department of natural resources.

\* \* \* \* \*

"Agent" means an individual who represents a timber buyer in effecting or attempting to effect purchases of timber.

"Buying" means acquiring an interest in property by the payment of a price, value, or other consideration.

[22] Ind. Code § 25-36.5-1-2 provides in part that "no person shall engage in the business of timber buying in the state of Indiana without a registration certificate issued by the department."

[23] Ind. Code § 25-36.5-1-3.2 (2008) related to adjudicative proceedings by the Department to seek damages related to the wrongful activities of "(1) a timber buyer; or (2) a person who cuts timber but is not a timber buyer (referred to as a 'timber cutter' in this section)."[3] (Subsequently amended by Pub. L. No. 57-2013, § 86 (eff. July 1, 2013)).

---

[3] The term "timber cutter" is found in Ind. Code § 25-36.5-1-3.2 related to adjudicative proceedings and Ind. Code § 25-36.5-1-3(h) related to the posting of a bond by a property owner in connection with the issuance of

Ind. Code § 25-36.5-1-10 governs the criminal penalty for violating the Act and in 2008 provided:

> A person who:
>
> (1)    engages in business as a timber buyer without securing a registration or in violation of this chapter; or
>
> (2)    refuses to permit inspection of the person's premises, books, accounts, or records as provided in this chapter;
>
> commits a Class A misdemeanor. However, the offense is a Class D felony if the person has a prior unrelated conviction for an offense under this section.

(Subsequently amended by Pub. L. No. 158-2013, § 292 (eff. Jul. 1, 2014)).

In addition, Ind. Code § 25-36.5-1-9 provides that the Department may make rules and regulations to carry out the provisions of the Act. 312 Ind. Admin. Code 14-2-8 (2008) provides a definition of the phrase "[e]ngaged in the business of buying timber" as follows:

> "Engaged in the business of buying timber" means either of the following:
>
> (1)    The exertion of control over the sale of timber as demonstrated by any of the following occurrences:
>
>     (A)    The purchase of timber directly or through an agent from a timber grower.

---

a preliminary injunction or restraining order to prevent an alleged wrongful cutting by a timber cutter or timber buyer.

(B)    The selection of which or how much timber is cut. This clause does not include a person employed by a timber grower to provide technical expertise concerning timber valuation or management.

(C)    The selection of a person to act as a feller, skidder, or hauler.

(D)    The direction of timber to a particular market.

(2)    Negotiation with a timber grower for the right to purchase timber.

(Subsequently readopted without amendment May 26, 2009).

[26]    Arnold has the burden of establishing that a defense overlooked by his trial counsel would have likely changed the outcome of the proceeding. *See Fisher*, 810 N.E.2d at 679; *Segura,* 749 N.E.2d at 499. Based on the evidence presented at the post-conviction hearing, we conclude that Arnold has not met his burden.

[27]    Ind. Code § 25-36.5-1-1 defines a timber buyer as a person "engaged in the business of buying timber" from timber growers for sawing into lumber, processing, or resale. In turn, 312 I.A.C. 14-2-8 provides a definition of "[e]ngaged in the business of buying timber." The administrative rule found at 312 I.A.C. 14-2-8 provides further guidance as to the persons who are timber buyers under the Act, and we note that Arnold does not cite to the definition in 312 I.A.C. 14-2-8 or argue that he could not have been engaged in the business of buying timber as defined under that rule. According to the definition, a person engages in the business of buying timber by exerting control over the

sale of timber, as demonstrated by certain occurrences, or by negotiating with a timber grower for the right to purchase timber. *See* 312 I.A.C. 14-2-8.

[28] In her affidavit, Burton states that she and Arnold agreed that he would cut trees on her property and that the profits would be split on a fifty/fifty basis. Also, Arnold testified that Anderson asked him to cut some trees on Burton's property and "sell 'em . . . to the sawmills" and that he "said [he] would do it on a fifty/fifty deal." Transcript at 21. Arnold also testified that he agreed to pay, and did pay, Warren for two trees that Arnold had cut and Warren believed were on his property. Arnold did not present any evidence that a person other than himself negotiated the sale of the timber on Burton's property. Arnold has not established that he did not "[n]egotiat[e] with a timber grower for the right to purchase timber" under 312 I.A.C. 14-2-8(2).

[29] In addition, Burton states in her affidavit that she did not know exactly how many trees were to be harvested and that Arnold agreed "to cut all harvestable trees in a predetermined area." Petitioner's Exhibit 4. Arnold testified he agreed to sell the trees on Burton's land "to the sawmills" and that he paid Warren for trees that Warren believed were on his property. Transcript at 21. He also testified that he "went to doing small little jobs like this" to "cut just a few trees and sell them to other mills." *Id.* at 22-23. Arnold does not challenge the finding that the timber he had logged from the Burton property was sold to the Worley saw mill. He did not present evidence that he did not select which or how much timber was cut, that he was employed by Burton solely to provide technical expertise concerning timber valuation or management, that he did not

select the person or persons to act as the feller, skidder, or hauler, or that he did not direct the timber to a particular market such as the Worley saw mill. Arnold has not established that he did not "exert[] control over the sale of timber" under 312 I.A.C. 14-2-8(1). *See* 312 I.A.C. 14-2-8(1) (the exertion of control over the sale of timber can be demonstrated by the selection of which or how much timber is cut, the selection of a person to act as a feller, skidder, or hauler, and the direction of timber to a particular market).

[30] Based on the evidence presented at the post-conviction hearing and Ind. Code §§ 25-36.5-1 and 312 I.A.C. 14-2-8, we conclude that Arnold has not established that a defense overlooked by his trial counsel, namely, the argument that Arnold was not engaged in the business of timber buying, would likely have changed the outcome of the proceeding. We cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *See Richardson v. State*, 800 N.E.2d 639, 646-647 (Ind. Ct. App. 2003) (holding that the petitioner failed to show that he was prejudiced by his counsel's failure to file a motion to dismiss), *trans. denied*.

## *Conclusion*

[31] For the foregoing reasons, we affirm the post-conviction court's denial of Arnold's petition.

[32] Affirmed.

Robb, J., and Mathias, J., concur.