FILED

Dec 27 2017, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



APPELLANT PRO SE

Dorian Lee
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Dorian Lee,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

December 27, 2017

Court of Appeals Case No.
71A05-1702-PC-326

Appeal from the St. Joseph
Superior Court

The Honorable Jane Woodward
Miller, Judge

Trial Court Cause No.
71D01-0305-PC-20

**Bailey, Judge.**

## Case Summary

[1]     Dorian Lee ("Lee") appeals, pro se, the post-conviction court's denial of his amended petition for post-conviction relief. We affirm.

# Issues

On appeal, Lee raises multiple ineffective assistance of trial and appellate counsel claims, which we restate as follows:

I. Whether Lee's trial counsel was ineffective for failing to object to jury instructions regarding accomplice liability for murder.

II. Whether Lee's trial counsel was ineffective for failing to object to jury instructions regarding attempted murder.

III. Whether Lee's trial counsel was ineffective for failing to object to jury instructions and prosecutor's statements regarding accomplice liability for attempted murder.

IV. Whether Lee's trial counsel was ineffective for failing to object to jury instructions that created a "mandatory presumption."

V. Whether Lee's trial counsel was ineffective for failing to raise the lack of evidence that Lee attempted to murder Janice Boyd.

VI. Whether Lee's trial counsel was ineffective for failing to properly impeach adverse witnesses.

VII. Whether Lee's trial counsel was ineffective for failing to properly conduct discovery.

VIII. Whether Lee's trial counsel was ineffective for failing to seek a trial separate from Lee's co-defendants.

IX.     Whether Lee's trial counsel was ineffective for failing to object to the admission of a firearm because it was obtained pursuant to an illegal search.

X.      Whether Lee's appellate counsel was ineffective for failing to raise Lee's trial counsel's ineffective assistance.

# Facts and Procedural History

[3]     The facts underlying Lee's convictions were set out in the Indiana Supreme Court's decision on Lee's direct appeal:

> On June 12, 1995, [Lee], along with two armed men, Terrance Mitchem and Michael Greer, broke and entered a home occupied by four adults. [Lee] raped one of the female victims and participated in the shooting of all four victims. One victim was killed,[1] while the other three survived.[2]

*Lee v. State*, 684 N.E.2d 1143, 1145 (Ind. 1997). We will provide additional facts as needed.

[4]     Following a December 1995 jury trial in which Lee was tried jointly with co-defendants Terrance Mitchem ("Mitchem") and Michael Greer ("Greer"), Lee was convicted of murder;[3] burglary, as a Class B felony;[4] three counts of

---

[1] The victim who was killed was Victor Hill ("Hill").

[2] The other three victims were Janice Boyd ("Janice"), Nicole Boyd ("Nicole"), and Jeffrey Sims ("Sims").

[3] Ind. Code § 35-42-1-1 (1993).

[4] I.C. § 35-42-2-1.

attempted murder, as Class A felonies;[5] and rape, as a Class A felony.[6] Lee filed a direct appeal in which our Supreme Court upheld his convictions. *Lee*, 684 N.E.2d at 1150.

[5] On May 8, 2003, Lee filed a petition for post-conviction relief ("PCR"). On September 4, 2007, Lee filed a motion for an indefinite continuance of his PCR petition, and the trial court granted the motion. On May 1, 2015, Lee filed an amended petition for PCR in which he raised numerous allegations of ineffective assistance of trial and appellate counsel. The court held a post-conviction evidentiary hearing on May 27, 2016, and October 29, 2016. On January 11, 2017, the post-conviction court issued its order denying Lee's petition. This appeal ensued.

# Discussion and Decision

## Standard of Review

[6] Lee appeals the post-conviction court's denial of his amended petition for post-conviction relief. Our standard of review is clear:

> [The petitioner] bore the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues, [the

---

[5] I.C. §§ 35-41-5-1 and 35-42-1-1.

[6] I.C. § 35-42-4-1.

petitioner] must convince this Court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post[-]conviction court. *Harrison v. State*, 707 N.E.2d 767, 773 (Ind. 1999) (citing *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind. 1995)). We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post[-]conviction court. *Id.* at 774.

Post[-]conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999). Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post[-]conviction rules. P C.R. 1(1); *Rouster*, 705 N.E.2d at 1003. If an issue was known and available, but not raised on direct appeal, it is waived. *Rouster*, 705 N.E.2d at 1003. If it was raised on appeal, but decided adversely, it is res judicata. *Id.* (citing *Lowery v. State*, 640 N.E.2d 1031, 1037 (Ind. 1994)). If not raised on direct appeal, a claim of ineffective assistance of trial counsel is properly presented in a post[-]conviction proceeding. *Woods v. State*, 701 N.E.2d 1208, 1215 (Ind. 1998). A claim of ineffective assistance of appellate counsel is also an appropriate issue for post[-]conviction review. As a general rule, however, most free-standing claims of error are not available in a post[-]conviction proceeding because of the doctrines of waiver and res judicata. Some of the same contentions, to varying degrees, may be properly presented in support of a claim of ineffective assistance of trial or appellate counsel.

*Timberlake v. State*, 753 N.E.2d 591, 597-98 (Ind. 2001).

## Ineffective Assistance of Trial Counsel

Lee contends that his trial counsel was ineffective. As our Supreme Court has noted:

[t]his Court reviews claims of ineffective assistance of counsel under the two components set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that counsel's performance was deficient. *Id*. at 687, 104 S.Ct. 2052. This requires a showing that counsel's representation fell below an objective standard of reasonableness, *id*. at 688, 104 S.Ct. 2052, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment, *id*. at 687, 104 S.Ct. 2052. Second, the defendant must show that the deficient performance prejudiced the defendant. *Id*. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694, 104 S.Ct. 2052. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

*Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002); *see also Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001) (citation omitted) ("In order to prove ineffective assistance of counsel due to the failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure.").

[8] We will not second-guess trial counsel's strategy and tactics unless they are so unreasonable that they fall outside objective standards. *See, e.g.*, *Benefield v. State*, 945 N.E.2d 791, 797 (Ind. Ct. App. 2011). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Wentz*, 766 N.E.2d at 361. And if we can dispose of a claim of ineffective assistance of counsel by analyzing the prejudice prong

alone, we will do so. *Benefield*, 935 N.E.2d at 797 (citing *Wentz*, 766 N.E.2d at 360).

[9] Lee raises eight ineffective assistance of trial counsel claims, each of which we address in turn.

### 1. *Failure to object to jury instructions regarding accomplice liability for murder*

[10] Lee was charged, as a principal, with the murder of Victor Hill, and the State also tried Lee as an accomplice to that murder.[7] Lee contends that the jury instructions regarding accomplice liability for murder[8] were improper because

---

[7] To the extent Lee maintains that he could not properly be tried for murder both as a principal and an accomplice, he is mistaken. *See, e.g.*, *Taylor v. State*, 840 N.E.2d 324, 333 (Ind. 2006). Moreover, it is irrelevant whether the jury found Lee guilty as a principal or an accomplice because he was equally culpable under either theory of liability. *See id.*

[8] The final jury instruction regarding murder stated as follows:

> To convict a defendant of Murder as charged in Counts [sic] I, the State must have proved each of the following elements beyond a reasonable doubt:
>
> 1. A defendant, acting alone or with an accomplice,
>
> 2. intentionally,
>
> 3. killed Victor Hill.

Trial Record (hereinafter, "Tr. R.") Vol. I at 151.

The final jury instructions regarding aiding and abetting stated as follows:

> In order for you to find a defendant aided, induced, or caused any of the counts of murder, attempted murder, or burglary, the [S]tate must have proved beyond a reasonable doubt that[,] with regard to any of these charges, that [sic] a defendant was aware with a high degree of probability that he was engaged in conduct that aided, induced, or caused murder, attempted murder, and burglary and that his behavior would facilitate the commission of the murder, attempted murder[,] and burglary.

*Id.* at 157; and

> You may find the defendant guilty of the offense if you find that the offense was committed by someone whom the defendant aided, induced[,] or caused to commit the offense.

they did not inform the jury that, in order to find Lee guilty as an accomplice, it must find that those whom he was aiding acted with the knowing or intentional mens rea for murder. In support, he cites the Court of Appeals case *Taylor v. State*, 820 N.E.2d 691, 695 (Ind. Ct. App. 2005). However, that decision was vacated by our Supreme Court, which specifically held that a defendant can be found guilty of murder for intentionally aiding and abetting a principal to kill a victim so long as the principal killed the victim and the defendant knew or intended that the victim would be killed. *Taylor v. State*, 840 N.E.2d 324, 335-36 (Ind. 2006). This is so even if the principal did not "knowingly or intentionally" kill the victim. *Id.* Thus, a defendant can be found guilty of a

> Before you can find a defendant guilty of the charge in this manner, you must find beyond a reasonable doubt that he participated in the crime in such a way as to aid, induce[,] or cause the crime to be committed.
>
> Negative acquiescence, that is, merely letting a crime occur, is not sufficient participation to support a guilty verdict.
>
> Similarly, mere presence at the scene of a crime is not sufficient participation to support a guilty verdict. Th[e] fact that the defendant was a relative or companion of the person who committed the crime does not constitute aiding, inducing[,] or causing the crime.
>
> There must be some conduct of an affirmative nature on the part of the defendant that aids, induces[,] or causes the crime to be committed in order for you to find him guilty of a crime another person committed.

*Id.* at 178.

The court also provided the jury with the following instruction regarding accomplice liability:

> A person is responsible for the acts of his accomplices as well as his own. The acts of one person are attributable to all who are acting together during the commission of a crime. Accordingly, the State need not prove, beyond a reasonable doubt, that a defendant personally and acting by himself, committed all of the elements of the crime or crimes with which he is charged. However, the State must prove, beyond a reasonable doubt, that the defendant and the other person or persons, acting together, committed all of the elements of the crime or crimes with which he is charged.

*Id.* at 166.

greater degree of homicide than the principal; in such a situation, the defendant's mens rea would be more culpable than that of the principal. *Id*. Therefore, the post-conviction court did not err in ruling that Lee's trial counsel was not ineffective for failing to object that the jury instructions regarding accomplice liability for murder did not require the jury to find that the principal had the specific mens rea to kill.

### 2. *Failure to object to jury instructions regarding attempted murder*

[11] Lee maintains that the jury instructions regarding attempted murder were improper because they included the information in six counts against Lee, including Counts III through V, which used the word "knowingly" in relation to the element of mens rea for attempted murder.[9] In support, he cites *Spradlin*

---

[9] The charging information on Counts III through V, as contained in the final jury instructions, stated in relevant part that Lee, "with the intent to commit the crime of Murder, that is[,] knowingly or intentionally killing another human being, engaged in conduct that constituted a substantial step toward the commission of the crime of Murder …." Tr. R. Vol. I at 144-45.

The final jury instructions regarding attempted murder stated as follows:

> To convict a defendant of attempted murder, a Class A felony, as charged in Counts III, the State must prove each of the following elements beyond a reasonable doubt:
>
> 1. A defendant,
> 2. With the intent to kill [the victim],
> 3. Engaged in conduct which was a substantial step toward the commission of the crime of murder.

Tr. R. Vol. I at 153.

The jury also received the following additional instruction regarding attempted murder:

> In a case where a defendant is charged with Attempted Murder, it is not enough that a defendant engaged in the proscribed conduct, such as firing a weapon. The State must prove beyond a reasonable doubt that a defendant also engaged in the conduct *with the specific intention of accomplishing the killing* of a human being.

*v. State*, which held that jury instructions regarding a charge of direct liability for attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant acted with the specific intent to kill and took a substantial step toward such killing. 569 N.E.2d 948, 950-51 (Ind. 1991); *see also Rosales v. State*, 23 N.E.3d 8, 12 (Ind. 2015) (noting that *Spradlin* related to direct liability, rather than accomplice liability, for attempted murder). The "*Spradlin* rule" is necessary because of "the higher sentence range for attempted murder in combination with the ambiguity involved in the proof of that crime." *Ramsey v. State*, 723 N.E.2d 869, 872 (Ind. 2000). Lee maintains that, because the instruction quoting the charging information on murder included the word "knowingly," it erroneously led the jury to believe it could convict him of attempted murder upon a showing that he merely "knew" he was acting, regardless of his intent in acting. We disagree.

[12]     Lee is correct that an instruction that informs the jury that a "knowingly" mens rea, alone, is sufficient to establish guilt, as a principal, of attempted murder constitutes fundamental error. *Spradlin*, 569 N.E.2d at 950-51. However, that is not what the jury instructions regarding direct liability for attempted murder stated in Lee's case. We do not read segments of a jury instruction in isolation; rather, we consider the instructions as a whole. *Price v. State*, 765 N.E.2d 1245, 1252 (Ind. 2002). Here, the jury instructions as a whole informed the jury that, in order to find Lee guilty of attempted murder, "it is not enough that [he]

---

*Id.* at 156 (emphasis added).

engaged in the proscribed conduct," i.e., that he acted knowingly. Tr. R. Vol. I at 156. The instruction then states that the jury must find the defendant acted "with the specific intention of accomplishing the killing" of another human being. *Id*. The instruction on attempted murder also stated that the State had to prove beyond a reasonable doubt Lee's "intent to kill" the victim. *Id*. at 153. Therefore, there was no *Spradlin* error in the jury instructions, and trial counsel was not ineffective for failing to object on that basis. *See Ramsey v. State*, 723 N.E.2d 869, 872-73 (Ind. 2000) (finding the jury instructions as a whole sufficiently informed the jury of the specific intent requirement for attempted murder, despite the use of the word "knowingly" in one of the instructions).

### 3. Failure to object to jury instructions and prosecutor's statements regarding accomplice liability for attempted murder

[13] Lee asserts his trial counsel was ineffective for failing to object to (1) instructions that permitted the jury to convict him of attempted murder *as an accomplice* without the specific intent to kill, and (2) the prosecutor's closing argument indicating the same. The *Spradlin* decision made it clear that, in the context of direct liability, a jury instruction must set forth the specific intent requirement for attempted murder. *Spradlin*, 569 N.E.2d at 950. In 2000, our Supreme Court for the first time held that the same rule applies to jury instructions relating to *accomplice* liability for attempted murder. *Bethel v. State*, 730 N.E.2d 1242, 1246 (Ind. 2000). Even more recently, our Supreme Court

held, in a matter of first impression,[10] that the same rule applies to jury instructions relating to attempted murder where *both* theories of direct and accomplice liability are at issue. *Rosales*, 23 N.E.2d at 15. Thus, as of the date *Rosales* was decided—i.e., January 15, 2015—Indiana law requires that, where both direct *and* accomplice liability theories are at issue for an attempted murder charge, the jury instructions must specify that a conviction requires proof beyond a reasonable doubt that the defendant had the specific intent to kill. *Id*. Moreover, it is not sufficient that the instructions regarding attempted murder require a finding of specific intent if the accomplice instructions do not *also* require a finding of specific intent. *Id*.; *see also Tiller v. State*, 896 N.E.2d 537, 542 (Ind. Ct. App. 2008) ("While the trial court's instruction correctly stated the law as it generally pertained to accomplice liability, the trial court's instruction fell short of adequately instructing the jury that the specific intent requirement for attempted murder, as properly set forth in the attempted murder instruction, also applied to accomplice liability for attempted murder."), *trans denied*.

[14]   Here, like the defendant in *Rosales*, Lee was charged with attempted murder under both direct and accomplice theories of liability. And, as in *Rosales*, while Lee's jury instructions noted specific intent was required to convict him of attempted murder, the instructions regarding accomplice liability indicated that

---

[10] *Rosales*, 23 N.E.3d at 12-13 (noting the Court was resolving a matter of first impression).

a person could be guilty of attempted murder without also noting that he must have the specific intent to kill.[11] Furthermore, as in *Rosales*, the prosecutor exacerbated that error by indicating in his closing argument that Lee's specific intent to kill was *not* required to find him guilty of attempted murder as an accomplice.[12] *Id.* And, again as in *Rosales*, the general verdict forms used made it impossible to determine whether direct or accomplice liability formed the basis of the jury's decisions regarding attempted murder.[13] *Id.*

[15] However, Lee's trial took place in 1995. Thus, at the time of his trial, Indiana courts had not yet held that jury instructions on attempted murder under a theory of accomplice liability alone, *Bethel*, 730 N.E.2d at 1246, or accomplice and direct liability theories together, *Rosales*, 23 N.E.3d at 15, must state the requirement of specific intent to kill. "For purposes of ineffective assistance of counsel claims, the law requires consideration of legal precedent available to counsel at the time of his representation of the accused, and counsel will not be deemed ineffective for not anticipating or initiating changes in the law." *Sweeney v. State*, 886 N.E.2d 1, 8 (Ind. Ct. App. 2008) (citing *Gann v. State*, 550

---

[11] *Compare* accomplice instructions in *Rosales*, 23 N.E.3d at 10-11 ("[a] person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense ... [a]n accomplice is liable for the acts of the principal which, even if not a part of their original plan, are probable and natural consequences thereof"), *with* the language in Lee's jury instructions regarding aiding and abetting, Tr. R. Vol. I at 178, and accomplice liability, *id.* at 166, as quoted in footnote 8, above.

[12] Regarding accomplice liability, the prosecutor stated to the jury: "All the State of Indiana has to do is show you that each one of these essential elements were committed. Each defendant doesn't have to do every one, as long as they're acting together, as long as all of those essential elements are fulfilled, then the State has satisfied its burden." Tr. R. Vol. VI at 1516.

[13] Tr. R. Vol. I at 185-87.

N.E.2d 73, 75 (Ind.1990)), *trans. denied*; *see also Smylie v. State*, 823 N.E.2d 679, 690 (Ind. 2005) (quotation and citation omitted) ("An attorney is not required to anticipate changes in the law and object accordingly in order to be considered effective"). The post-conviction court did not err in denying Lee's claim of ineffective assistance of counsel for failure to object to the instruction regarding accomplice liability for attempted murder.[14]

### 4. Failure to object that instructions created a "mandatory presumption"

[16] Lee also contends that, because the accomplice instructions, as applied to the attempted murder charges, did not require specific intent, they created an impermissible "mandatory presumption" that Lee had the required mens rea to find him guilty.[15]

> The Due Process Clause prohibits the State from relying upon an evidentiary presumption that has the effect of relieving it of its burden to prove every essential element of a crime beyond a reasonable doubt. *Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *McCorker v. State*, 797 N.E.2d 257, 263 (Ind. 2003). As a threshold matter, we must first determine whether the challenged instruction creates a mandatory presumption or merely a permissive inference. *Francis*

---

[14] Because we hold that, at the time of Lee's trial, the law did not require that accomplice liability instructions for attempted murder must contain specific intent language, we do not address the State's contention that any instruction error regarding intent would be not be fundamental because Lee's intent was not at issue in that he relied exclusively on an alibi defense.

[15] Lee also contends—incorrectly—that "the proper reasonable doubt language is missing" from the jury instructions. Appellant's Br. at 24. The jury instructions define reasonable doubt, Tr. R. Vol. I at 169, and instruct that the State must prove all elements of all the crimes, generally, *Id.* at 168, and attempted murder, specifically, *Id.* at 157, beyond a reasonable doubt.

*v. Franklin*, 471 U.S. 307, 313–14, 105 S.Ct. 1965, 85 L.Ed.2d
344 (1985). "A mandatory presumption instructs the jury that it
must infer the presumed facts if the State proves certain predicate
facts." *Winegeart v. State*, 665 N.E.2d 893, 904 (Ind. 1996)
(emphasis added). If that presumption amounts to a shift in the
burden of proof, it is unconstitutional. *Francis*, 471 U.S. at 315–
16, 105 S.Ct. 1965.

*Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016). A permissive inference, on the

other hand,

> "suggests to the jury a possible conclusion to be drawn if the
> State proves predicated facts, but does not require the jury to
> draw that conclusion." [*Winegeart*, 665 N.E.2d at 904.] Such an
> inference "does not relieve the State of its burden of persuasion
> because it still requires the State to convince the jury that the
> suggested conclusion should be inferred based on the predicate
> facts proved." *Id*. Permissive inference instructions "violate the
> Due Process Clause only if the suggested conclusion is not one
> that reason and common sense justify in light of the proven facts
> before the jury." *Id*.

*Brown v. State*, 691 N.E.2d 438, 444 (Ind. 1998).

[17]     Here, the jury instructions regarding aiding and abetting used only permissive

language;[16] therefore, they created only a permissive inference rather than a

mandatory presumption. However, the instructions regarding accomplice

liability seem to create a mandatory presumption; that is, they indicate that, if

---

[16] The instructions used permissive language such as "in order for you to find," "you may find," and
"[b]efore you can find." Tr. R. Vol. I at 157, 178 (See footnote 8, above).

Lee acted together with his co-defendants, then he is guilty as an accomplice.[17] *Cf. McCorker v. State*, 797 N.E.2d 257, 264-65 (Ind. 2003) (finding similar accomplice liability language to be permissible when the *same instruction* also contained language requiring a finding of specific intent). But, the law at the time of Lee's trial held that an instruction that seems to create a mandatory presumption "'must be considered in the context of the charge as a whole,' because it may be explained by other instructions sufficiently to avoid the creation of an unconstitutional presumption."[18] *Winegeart*, 665 N.E.2d at 904 (quoting *Francis* 471 U.S. at 315). And, here, the instructions regarding attempted murder did require that the jury find specific intent to kill[19] in order to find Lee guilty, thereby avoiding the creation of an unconstitutional presumption.[20] *Id*. Therefore, Lee's counsel was not ineffective for failing to object to the accomplice liability instructions.

---

[17]  Tr. R. Vol. I at 166 (See footnote 8, above).

[18]  As noted in the previous section of this opinion, the law now requires that, in the specific case of accomplice instructions regarding attempted murder, the instructions must require a finding that the defendant acted with the specific intent to kill, and failure to do so within the accomplice instructions themselves *cannot be cured by looking to other instructions*. *Tiller*, 896 N.E.2d at 542. However, "[f]or purposes of ineffective assistance of counsel claims, the law requires consideration of legal precedent available to counsel at the time of his representation of the accused." *Sweeney*, 886 N.E.2d at 8.

[19]  Tr. R. Vol. I at 153, 156 (See footnote 9, above).

[20]  Because we hold that the instructions did not create a mandatory presumption, we do not address the State's contention that any instruction error regarding intent would be harmless because Lee's intent was not at issue in that he relied exclusively on an alibi defense.

### 5. *Failure to raise the lack of evidence of attempted murder of Janice Boyd*

[18]   Lee maintains that his attorney was ineffective for "failing to object to the insufficient evidence" that he attempted to murder Janice Boyd.[21]   Appellant's Br. at 25.   He contends that there was no evidence that he "shot at and against the body" of Janice or "inflicted wounds" on her, since there was no evidence that any of the shots he fired in Janice's direction actually hit her.   *Id*. at 26.   However, Lee is mistaken regarding what evidence is sufficient to establish guilt of attempted murder.

[19]   As our Supreme Court has noted,

> A conviction for attempted murder requires proof of a specific intent to kill. *Bethel v. State*, 730 N.E.2d 1242, 1245 (Ind. 2000). Because intent is a mental state, we have noted that intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury. *Wilson v. State*, 697 N.E.2d 466, 476 (Ind. 1998).   And firing a gun in the direction of an individual is substantial evidence from which a jury may infer intent to kill. *Jones v. State*, 536 N.E.2d 267, 270 (Ind. 1989).

*Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008).   This is so even if the deliberate use of a deadly weapon does not actually result in injury to the intended victim. "Attempted murder requires a certain act and a certain intent. It does not

---

[21]   Although Lee styles his claim as a "failure to object," we presume Lee means that his trial counsel was ineffective for failing to raise the issue of insufficient evidence, such as through a motion for judgment on the evidence or a motion for a directed verdict.   Ind. Trial Rule 50.

matter whether the act, the substantial step taken toward the commission of murder, results in any injury whatsoever, so long as it is coupled with the intent to kill." *Wethington v. State*, 655 N.E.2d 91, 96 (Ind. Ct. App. 1995) (holding the defendant's "intentional attempt on [the victim's] life was completed with the first swing of his tire tool in the direction of [the victim's] head, whether or not it connected"), *trans. denied*.

[20] Here, the evidence established that Lee, along with his co-defendants, lined the victims up and shot at them repeatedly. Lee used a shotgun and, although no shotgun pellets were recovered from Janice's body, the evidence established that Lee did, at close range, fire his shotgun in Janice's direction. That is sufficient evidence of Lee's actions and his intent to attempt to murder Janice, and his attorney was not ineffective for failing to raise the issue of a lack of such evidence.[22] *Henley*, 881 N.E.2d at 652.

### 6. *Failure to properly impeach adverse witnesses*

[21] Lee contends that his trial counsel was ineffective for failing to "properly impeach" adverse witnesses. Appellant's Br. at 27. Specifically, he asserts that his counsel failed to impeach witnesses with their prior inconsistent statements; failed to impeach co-defendant Mitchem regarding his biased reasons for placing blame on Lee; and failed to cross examine Sims regarding his faulty

---

[22] Furthermore, our Supreme Court has held generally that a "failure of trial counsel to move for a directed verdict does not create sufficient prejudice to result in a finding of ineffective assistance of counsel." *Siglar v. State*, 541 N.E.2d 944, 948 (Ind. 1989).

memory. However, "the method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance." *Kubsch v. State*, 934 N.E.2d 1138, 1151 (Ind. 2010); *see also McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (quotation and citation omitted) ("Few points of law are as clearly established as the principle that tactical or strategic decisions will not support a claim of ineffective assistance."). That is especially true here, where trial counsel did, in fact, take all the steps Lee claims she did not. Lee's trial counsel cross examined each of the victims regarding their prior statements to police which seemed inconsistent with their trial testimony. Tr. R. Vol. IV at 941-44; 975-79; Tr. R. Vol. V at 1167-70. Lee's trial counsel also cross examined Sims regarding his alleged faulty memory of the prior statements he made to police. Tr. R. Vol. V at 1168-70. And Lee's counsel pointed out in her closing argument the witnesses' inconsistent statements regarding Lee's identity as a perpetrator and Mitchem's attempts to shift blame from himself to Lee. Tr. R. Vol. at 1531-32.

[22] Lee has failed to show clear error in the post-conviction court's decision that Lee's trial counsel was not ineffective for failing to properly impeach adverse witnesses.

### 7. *Failure to properly conduct discovery*

[23] Lee asserts that his trial counsel did not "properly investigate" discovery materials and, had she done so, she would have: moved to suppress the firearm that he alleges the State obtained illegally; questioned Sims' character based on

his drug use; impeached witnesses regarding inconsistent statements; and objected to jury instructions. Appellant's Br. at 30. Lee fails to articulate which discovery materials his counsel did not obtain and/or review; rather, he simply states "i.e., Depositions." However,

> [c]ounsel's failure to interview or depose State's witnesses does not, standing alone, show deficient performance. The question is what additional information may have been gained from further investigation and how the absence of that information prejudiced his case.

*Williams v. State*, 771 N.E.2d 70, 74 (Ind. 2002) (citations omitted).

[24] We hold that Lee has waived this claim by failing to provide cogent argument. Lee does not state what additional information would have been gained if his lawyer had conducted depositions or otherwise "investigated" any other unidentified discovery materials. Appellant's Br. at 30. Nor does he explain how the absence of such information prejudiced his case. "On review, we will not search the record to find a basis for a party's argument, nor will we search the authorities cited by a party in order to find legal support for its position." *Young v. Butts*, 685 N.E.2d 147, 151 (Ind. 1997). Furthermore, we hold pro se litigations such as Lee to the same performance standards as practicing attorneys. *See, e.g.*, *Smith v. State*, 822 N.E.2d 193, 203 (Ind. Ct. App. 2005), *trans. denied*. Lee's failure to provide cogent argument regarding his lawyer's alleged deficiency in conducting discovery waives that argument for our review. Ind. Appellate Rule 46(A)(8)(a); *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015).

Waiver notwithstanding, Lee's trial counsel testified at his PCR hearing that she reviewed all discovery material, PCR Tr. Vol. II at 19, 24, 28, and the post-conviction court found her testimony credible, PCR App. Vol. IV at 183. Lee has pointed to nothing in the record to counter trial counsel's credible testimony. The post-conviction court did not err in finding that Lee's trial counsel was not ineffective for failing to adequately conduct discovery.

### 8. *Failure to seek a separate trial from co-defendants*

Lee maintains that his trial counsel was ineffective for failing to object when counsel for Lee's co-defendant "became a second prosecutor during his closing argument." Appellant's Br. at 31. Lee cites to the closing argument of Greer's attorney, who stated:

> Now maybe as Mr. Mitchem suggested, things didn't go as planned. Dorian Lee decided to go and do something that was not intended. Maybe we heard Little Vic apparently talk back to him, and maybe Mr. Lee thought that was justification for changing the plans and actually shooting somebody. But what was the intent of Mr. Greer? Was he doing things knowing that [Lee] was now serious, that these weren't just threats to scare these folks to intimidate them, but now Mr. Lee had changed the scheme, it was now I am going to take somebody out. [Tr. R. Vol. VI at 1539.] … The murder's the same thing. Did Michael Greer know that Dorian Lee had changed the plan? [*Id.* at 1540.] … Michael Greer is the one that once some shots were fired said, "Let's go, let's go." And he left. I suggest that shows this was— he suddenly found himself in a situation that he did not expect. But it had suddenly become real. It wasn't just plan and scaring people, somebody had changed the rules, upped the ante a lot, and he got out of there.

Tr. R. Vol. VI at 1539-41.

[27] This is precisely the closing argument language which Lee challenged on his direct appeal, and the issue was decided adversely to him. *Lee v. State*, 684 N.E.2d 1143, 1148 (Ind. 1997). And, our Supreme Court has noted the limited nature of post-conviction relief, which does not extend to re-litigating issues that rest on essentially the same claim that was raised on direct appeal:

> The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Taylor v. State*, 840 N.E.2d 324, 330 (Ind. 2006); *Grey v. State*, 553 N.E.2d 1196, 1197 (Ind. 1990). A post-conviction petition is not a substitute for an appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002). Further, post-conviction proceedings do not afford a petitioner a "super-appeal." *Benefiel v. State*, 716 N.E.2d 906, 911 (Ind. 1999), *cert. denied*, 531 U.S. 830, 121 S.Ct. 83, 148 L.Ed.2d 45 (2000). Our post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999), *cert. denied*, 529 U.S. 1113, 120 S.Ct. 1970, 146 L.Ed.2d 800 (2000). If an issue was known and available but not raised on appeal, it is waived. *Rouster v. State*, 705 N.E.2d 999, 1003 (Ind. 1999). If an issue was raised on direct appeal, but decided adversely to the petitioner, it is *res judicata*. *Trueblood v. State*, 715 N.E.2d 1242, 1248 (Ind. 1999), *cert. denied*, 531 U.S. 858, 121 S.Ct. 143, 148 L.Ed.2d 94 (2000).
>
> The doctrine of *res judicata* bars a later suit when an earlier suit resulted in a final judgment on the merits, was based on proper jurisdiction, and involved the same cause of action and the same parties as the later suit. *Annes v. State*, 789 N.E.2d 953, 954 (Ind. 2003). As a general rule, when a reviewing court decides an issue on direct appeal, the doctrine of *res judicata* applies, thereby

precluding its review in post-conviction proceedings. *Ben–Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000). The doctrine of *res judicata* prevents the repetitious litigation of that which is essentially the same dispute. *Sweeney v. State*, 704 N.E.2d 86, 94 (Ind. 1998). And, *a petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error*. *State v. Holmes*, 728 N.E.2d 164, 168 (Ind. 2000). "[W]here an issue, although differently designated, was previously considered and determined upon a criminal defendant's direct appeal, the State may defend against defendant's post-conviction relief petition on grounds of prior adjudication or *res judicata*." *Cambridge v. State*, 468 N.E.2d 1047, 1049 (Ind. 1984) (emphasis in original).

*Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006) (emphasis added).

[28] Here, Lee's post-conviction claim that his co-defendant's lawyer "became a second prosecutor" during closing argument is nothing more than a rephrasing of his argument on direct appeal; i.e., that his trial should have been severed from his co-defendants' trials. Our Supreme Court considered and rejected that argument on direct appeal. *Lee*, 684 N.E.2d at 1148-49 (holding Lee failed to show that he was prejudiced by the testimony and arguments of his co-defendants during trial such that the trials should have been separated). The post-conviction court did not err in finding that this claim was res judicata.[23]

---

[23] Moreover, as the post-conviction court noted, Lee's trial counsel "repeatedly moved to sever Lee's trial from that of his co-defendants," but her motions were unsuccessful. PCR R. Vol. IV at 197. And, of course, Lee's appellate counsel also raised the issue on appeal. Thus, even if the claim were not res judicata, we would not find that the post-conviction court erred in denying Lee's claim of ineffective assistance of trial counsel.

### 9. *Failure to object to admission of a firearm because it was obtained pursuant to an illegal search*

Lee next asserts that his trial counsel was ineffective because she failed to object to the admission of the firearm Lee used in the shootings. He contends that the firearm was obtained pursuant to an unconstitutional search because it was obtained without a warrant and the person who owned the home where it was found had not consented to the search. However, the post-conviction court did not err in finding that Lee lacked standing to challenge the search of the home.

Fourth Amendment rights "are personal and may not be vicariously asserted." *Peterson v. State*, 674 N.E.2d 528, 532 (Ind. 1996) (quotation and citation omitted). Therefore, "[a] defendant aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by the search of a third person's premises has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1973). The home where the police searched and found the firearm Lee used in the shootings was owned by the mother of Candilaria Hernandez ("Hernandez"). Lee did not live at the home and had no other interest in the home. Therefore, he lacks standing, under the Fourth Amendment, to challenge the search of that home or the fruits of that search. *Id*.

Lee also purports to raise a separate analysis of his trial counsel's alleged ineffectiveness for failing to object to the admission of the firearm under the state constitution. Under Article 1, Section 11 of the Indiana Constitution, a defendant has standing when, although he had no interest in the premises

searched, he did have an interest in the property that was found during that search. *Campos v. State*, 885 N.E.2d 590, 598 (Ind. 2008) ("[T]he Indiana Constitution provides protection for claimed possessions irrespective of the defendant's interest in the place where the possession was found."). However, Lee provides no record evidence or legal authority relating to this state constitutional claim, nor does he provide any cogent argument as to how this provision applies to him. Therefore, his claim under Article 1, Section 11 is waived. App. R. 46(A)(8)(a); *Pierce*, 29 N.E.3d at 1267.

[32] Waiver notwithstanding, as the post-conviction court found, Lee has pointed to no evidence that he had any interest in any of the firearms seized at Hernandez' mother's house. PCR R. Vol. IV at 186. Therefore, the post-conviction court did not err in finding that Lee had no standing to object, under the Indiana Constitution, to the search and seizure of the firearm and that Lee's counsel was not ineffective for failing to make such an objection. *Wrinkles*, 749 N.E.2d at 1192 (holding trial counsel is not ineffective for failing to make an objection that would not be sustained).

## Ineffective Assistance of Appellate Counsel

[33] Lee also maintains that his appellate counsel was ineffective for failing to raise on appeal his trial counsel's ineffective assistance. Our Supreme Court has described the burden a party must carry for a claim of this type:

> When the claim of ineffective assistance is directed at appellate counsel for failing fully and properly to raise and support a claim of ineffective assistance of trial counsel, a defendant faces a

compound burden on post[-]conviction. The post[-]conviction court must conclude that appellate counsel's performance was deficient and that, but for the deficiency of appellate counsel, trial counsel's performance would have been found deficient and prejudicial. Thus, Timberlake's burden before the post[-]conviction court was to establish the two elements of ineffective assistance of counsel separately as to both trial and appellate counsel. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 261-62 (Ind.2000).

*Timberlake*, 753 N.E.2d at 604.

[34] Because Lee has failed to show that his trial counsel was ineffective, his claims of ineffective assistance of appellate counsel based on a failure to raise trial counsel's alleged deficiency must also fail. *Allen v. State*, 749 N.E.2d 1158, 1168-69 (Ind. 2001) (holding that, because claimed errors by trial counsel did not in themselves warrant relief, claims of ineffective assistance of appellate counsel for failure to raise the alleged trial counsel errors would necessarily fail as well). The post-conviction court did not err by concluding that Lee failed to meet his burden of proof on this issue.

# Conclusion

[35] Lee has failed to carry his burden of establishing that he is entitled to post-conviction relief. The post-conviction court did not err when it found that neither Lee's trial counsel nor his appellate counsel provided ineffective assistance to Lee.

Affirmed.

Kirsch, J., and Pyle, J., concur.