## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 01 2019, 5:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jonathan D. Harwell
Harwell Legal Counsel LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jerry Emerson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

May 1, 2019

Court of Appeals Case No.
18A-PC-1687

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

The Honorable Steven J. Rubick, Magistrate

Trial Court Cause No.
49G01-0805-PC-107649

**Najam, Judge.**

## Statement of the Case

Jerry Emerson appeals the post-conviction court's denial of his petition for post-conviction relief. Emerson presents several issues for our review, which we consolidate and restate as one issue, namely, whether the post-conviction court erred when it concluded that he was not denied the effective assistance of trial counsel. We affirm.

## Facts and Procedural History

On direct appeal, this Court set out the facts and procedural history as follows:

> On July 30, 2007, Emerson and Samuel "Buddha" Fancher were driving in an Indianapolis neighborhood and spotted seventeen-year-old Leroy Moorman and sixteen-year-old Ryan Sampson. Emerson and Fancher recognized the teenagers as people who had previously broken into their house. The two men forced Moorman and Sampson into their car at gunpoint and drove them to a vacant residence. Once there, they took Moorman and Sampson to a bathroom and shot them. Sampson was shot multiple times, including in the head, and died at the scene. Moorman was shot in both arms and lay on the floor with his eyes closed until Emerson and Fancher left. He then went to a nearby residence for help. Moorman survived the shooting.
>
> Later, Emerson told Curtis Williams about the shooting. Williams testified at trial that Emerson described the shooting as follows:
>
> > As soon as I got to the mother f***ing house, I shot that mother f***er dead in the head. This little b**** [Fancher] was gonna do the same d*** thing, but he wanna give mother f***ers body shots. I told him

> that body shots don't work, and [Fancher] said, he
> thought he was dead, too.

> Tr. p. 206-07. After Williams subsequently learned that he was
> distantly related to Sampson, he told an uncle and later the police
> what he knew.

> The State charged Emerson with murder, attempted murder,
> Class B felony criminal confinement, and Class A misdemeanor
> carrying a handgun without a license. The case proceeded to a
> jury trial. At the conclusion of trial, Emerson was convicted as
> charged.

*Emerson v. State*, No. 49A02-0809-CR-848, 2009 WL 1974552, at *1 (Ind. Ct.
App. July 9, 2009) (footnotes omitted), *trans. denied*. We affirmed Emerson's
convictions on direct appeal. *Id.* at *10.

[3] On June 4, 2010, Emerson filed a *pro se* petition for post-conviction relief, and
on February 15, 2017, he filed a petition for post-conviction relief by counsel.
Following a hearing, the post-conviction court denied his petition. This appeal
ensued.

## Discussion and Decision

[4] Emerson appeals the post-conviction court's denial of his petition for post-
conviction relief. As our Supreme Court has stated:

> "The petitioner in a post-conviction proceeding bears the burden
> of establishing grounds for relief by a preponderance of the
> evidence." *Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014).
> "When appealing the denial of post-conviction relief, the
> petitioner stands in the position of one appealing from a negative

judgment." *Id.* at 274. In order to prevail on an appeal from the denial of post-conviction relief, a petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Humphrey v. State*, 73 N.E.3d 677, 681-82 (Ind. 2017).

[5] In particular, Emerson alleges that the post-conviction court erred when it determined that he was not denied the effective assistance of counsel.

When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Campbell v. State*, 19 N.E.3d 271, 274 (Ind. 2014). The "[f]ailure to satisfy either prong will cause the claim to fail." *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

[6] Emerson contends that his trial counsel was ineffective when she did not object to: testimony about a witness' reluctance to testify; three instances of alleged prosecutorial misconduct; one instance of alleged hearsay; and an allegedly erroneous jury instruction. Emerson also contends that his counsel was ineffective when she did not move to suppress certain evidence.[1] We address each contention in turn.

### Witness' Reluctance to Testify

[7] Emerson asserts that his trial counsel's performance was deficient when she did not object to testimony and closing argument referring to Leroy Moorman's reluctance to testify because of fear or intimidation. Emerson correctly points out that "testimony about threats made against a witness is admissible only where a proper foundation has been laid showing the threats were made either by the defendant or with the defendant's knowledge or authorization." *Smith v. State*, 765 N.E.2d 578, 587 (Ind. 2002).

---

[1] We reject the State's contention that several of Emerson's arguments are barred by *res judicata*. While on direct appeal Emerson raised substantive issues related to some of his claims of ineffective assistance of counsel, we addressed those contentions under a fundamental error analysis, which is a different analysis than that presented under the ineffective assistance of counsel claims in this appeal.

In *Smith*, defendant's counsel made no objections when two witnesses testified that "they feared they might be harmed if they testified," but they had not been threatened. *Id.* And the Supreme Court stated that, "[w]ithout a showing tying these fears to [the defendant], its admission is error—for the same reason other unspecified threats are improper." *Id.* However, our Supreme Court held that "the errant admission of testimony of unspecified concerns of witnesses [did not] rise to the level of defective performance necessary to support a claim of ineffective assistance of counsel under *Strickland*." *Id.* at 588.

Here, Detective Tom Tudor testified that Moorman appeared to be "very reluctant" to testify at Emerson's trial and seemed "intimidated" or "just scared." Trial Tr. at 409. And, during closing argument, the prosecutor stated that Moorman was "the least reliable" witness because he was "petrified" and had tried to avoid testifying. *Id.* at 515. But neither Detective Tudor nor the prosecutor remarked on the source of Moorman's fear, and his fear was not described with any specificity. Following our Supreme Court's reasoning in *Smith*, given the "unspecified"[2] nature of Moorman's fears, we cannot say that trial counsel's failure to object rose to the level of deficient performance under *Strickland*. *Smith*, 765 N.E.2d at 588.

---

[2] As we stated in *Emerson I*, "the testimony regarding Moorman's reluctance to testify was vague and did not necessarily implicate that Moorman was afraid of the defendant." 2009 WL 1974552, at *10.

## *Prosecutorial Misconduct*

[10] Emerson contends that his trial counsel's performance was deficient and/or prejudiced him when she did not object to three instances of alleged prosecutorial misconduct: when the prosecutor elicited testimony about a prior trial date that was rescheduled when Moorman failed to appear; testimony referencing Emerson's exercise of his right to a speedy trial; and the prosecutor's reference to Emerson's failure to testify. We address each contention in turn.

## *Prior Trial Date*

[11] Emerson first asserts that "[t]he jury became privy to the fact this was Emerson's second trial attempt," which "left the jury with improper information." Appellant's Br. at 15-16. In support of that assertion, Emerson cites to one page of the trial transcript, where the State questioned Moorman about his failure to show up to testify at trial two weeks prior. Emerson does not explain why that question was "improper," and he does not cite any relevant case law to support his contention. Emerson has not demonstrated that his counsel's performance was deficient when she did not object to that question of Moorman.

## *Speedy Trial*

[12] As for the State's reference to Emerson's exercise of his right to a speedy trial, during the State's direct examination of Detective Tudor, Detective Tudor

testified that neither Emerson nor Fancher had left any traces of their DNA at the crime scene. And the following colloquy immediately ensued:

> Q: Now you are aware, are you not, detective, that the defendant in this case asked for a speedy trial?
>
> A: Yes, I'm aware.
>
> Q: And does that limit the time that the State has to bring somebody to trial?
>
> A: It certainly can.
>
> Q: And with your knowledge of the Crime Lab and the backlog of DNA, is there sufficient time, or was there sufficient time between now and then to get results back if we even had anything to look at?
>
> A: Probably not.

Trial Tr. at 430. Emerson asserts that the testimony was improper because it constituted "impermissible burden shifting" and it was "an invitation for the jury to draw an adverse inference from the accused's exercise of his constitutional rights." Appellant's Br. at 15-16 (citing *Moore v. State*, 669 N.E.2d 733, 738 (Ind. 1996)).

[13] In *Emerson I*, we concluded that "the jury was *not* left with an inference that Emerson's speedy trial request thwarted the State's efforts to conduct DNA testing." 2009 WL 1974552, at *5 (emphasis original). Accordingly, we rejected Emerson's fundamental error argument on this issue because "[a]ny error created by the State's mention of Emerson's exercise of his speedy trial

right did not create a substantial potential for harm." *Id.* Likewise, here, Emerson has not persuaded us that but for his counsel's failure to object to this passing reference to his speedy trial request the outcome of his trial would have been different. Without any showing of prejudice, Emerson's claim on this issue fails.

### *Failure to Testify*

Emerson contends that the following remarks made during closing argument by the State were improper:

> We're not asking you to believe [Williams], we're asking you to believe [Emerson]. He's the one that told you what happened. He told you through [Williams], and [Williams] knows things he could not have known. . . . We're not asking you to believe Curtis Williams. Believe [Emerson]. He's the one that told you what happened through Curtis Williams.

Trial Tr. at 518. Emerson maintains that, with those closing remarks, the State invited the jury "to draw an adverse inference" from his failure to testify, which is prohibited. Appellant's Br. at 17. But, had Emerson's trial counsel objected to the closing remarks on that ground, the objection would not have been sustained. As we stated in *Emerson I*, "the State's comment was merely an argument explaining to the jury why it should credit Williams's testimony," which "was a proper comment upon the credibility of a witness and did not constitute prosecutorial misconduct." 2009 WL 1974552, at *6. Accordingly, Emerson's trial counsel's performance was not deficient when she did not object to the challenged remarks.

## *Hearsay*

[15]    Emerson contends that his counsel's performance was deficient when she did not object to alleged hearsay testimony during the State's direct examination of Detective Tudor. In particular, Emerson maintains that Detective Tudor's testimony regarding Moorman's identification of Emerson and Fancher as the two men "in the bathroom" at the time of the shooting constituted impermissible hearsay to which his counsel should have objected. Trial Tr. at 107. We cannot agree.

[16]    Indiana Evidence Rule 801(d)(1)(C) provides that out-of-court statements are not hearsay when the "declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made shortly after perceiving the person." "The term 'shortly' is relative, not precise; the purpose of the rule is to assure reliability." *Davis v. State*, 13 N.E.3d 939, 945 (Ind. Ct. App. 2014) (quoting *Dickens v. State*, 754 N.E.2d 1, 6 n.6 (Ind. 2001)), *trans. denied*. Here, because Detective Tudor testified concerning Moorman's identification of Emerson and Fancher one day after the shootings, and because Moorman testified at trial and was subject to cross-examination concerning that identification, the challenged testimony was not hearsay. Evid. R. 801(d)(1)(C). Emerson cannot show that his trial counsel's performance was deficient when she made no objection.

## *Jury Instruction*

[17]     Emerson contends that his counsel's performance was deficient when she did not object to the trial court's jury instructions for attempted murder under an accomplice liability theory.[3] Emerson asserts that a proper attempted murder jury instruction sets forth the following elements: that the defendant; with the specific intent to kill the victim; "engaged in conduct which was a substantial step toward such killing." Appellant's Br. at 22 (citing *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind. 1991)). And Emerson asserts that, where, as here, the State charges a defendant with attempted murder under an accomplice liability theory, "the State must prove that both the accomplice and the defendant had the specific intent to kill and took a substantial step towards the commission of murder and the jury must be instructed so." *Id.* (emphases omitted; citing *Hopkins v. State*, 759 N.E.2d 633, 637-38 (Ind. 2001)). On appeal, Emerson maintains that "[n]one of the provided jury instructions correctly informed the jury of this" and his counsel's performance was deficient when she "failed to object to the instructions or to tender her own correct attempted murder instruction." *Id.* We cannot agree.

[18]     The trial court instructed the jury on attempted murder, in relevant part:

> The crime of Attempt Murder is defined as follows:

---

[3] The State charged Emerson with Sampson's murder, but it charged Emerson as an accomplice in the attempted murder of Moorman.

"A person who knowingly or intentionally kills another human being, commits Murder, a Felony.

A person attempts to commit Murder when, acting with the culpability required for commission of the Murder, he engages in conduct that constitutes a substantial step toward commission of the Murder. The crime of Attempt Murder is a Class A Felony." To convict the defendant of Attempt[ed] Murder, the State must have proved each of the following elements:

That the defendant Jerry Emerson, on or about July 30, 2007,

1. did attempt to commit the crime of Murder,

2. which is to *intentionally kill* another human being, namely: *Leroy Moorman*, by engaging in conduct, that is: *shooting* a deadly weapon, that is: a handgun, at and against the person of Leroy Moorman,

3. *with the specific intent to kill Leroy Moorman*, resulting in serious bodily injury, that is: two (2) gunshot wounds,

4. which conduct constituted a *substantial step* toward the commission of said crime of Murder.

Appellant's App. p. 21-22 (emphases added). The trial court instructed the jury regarding accomplice liability as follows:

A person who knowingly or intentionally aids another person in committing or induces another person to commit or causes another person to commit a crime, is guilty of the crime, even though he does not personally participate in each act constituting the crime.

A person may be convicted of a crime by aiding, inducing, or causing another to commit a crime even if the other person:

1. has not been prosecuted for the offense

2. has not been convicted of the offense; or

3. has been acquitted of the offense[.]

In order to commit a crime by aiding, inducing or causing another to commit a crime, a person must have knowledge that he is aiding, inducing or causing the commission of the crime. To be guilty, one does not have to personally participate in the crime nor does he have to be present when the crime is committed. Merely being present at the scene of the crime is not sufficient to prove that he aided, induced or caused the crime. Failure to oppose the commission of the crime is also insufficient to prove aiding, inducing or causing another to commit the crime. But presence at the scene of the crime and or failure to oppose the crime's commission are factors which may be considered in determining whether there was aiding, inducing or causing another to commit the crime.

*Id.* at 24.

[19]     Emerson's contention that the jury instructions "did not contain the specific intent wording" is unavailing. Appellant's Br. at 24. To the contrary, the instructions properly state that the State had the burden to prove that Emerson attempted to murder Moorman, with the specific intent to kill him, and that he took a substantial step toward killing Moorman when he shot him. While Emerson correctly points out that the attempted murder instruction initially improperly defined murder as "*knowingly* or intentionally killing" another

person, his ineffective assistance of counsel claim in this appeal does not rest on that error. And, in any event, as we observed in *Emerson I*, "[t]he instructions presented to the jury, taken as a whole, sufficiently informed the jury that, in order to convict Emerson of attempted murder, it had to find that he acted with the specific intent to kill Moorman." 2009 WL 1974552, at *3. Emerson has not shown that he was denied the effective assistance of counsel on this issue. *See Lee v. State*, 91 N.E.3d 978, 986 (Ind. Ct. App. 2017) (holding no *Spradlin* error because instructions as a whole set out the proper *mens rea*), *trans. denied*.

### Motion to Suppress

[20] Finally, Emerson contends that his trial counsel's performance was deficient because she did not move to suppress evidence presented by the State "of an impermissible show-up identification with the family of Ryan Sampson." Appellant's Br. at 20. In particular, Emerson avers that the State showed "the family members one (1) car matching the description of [the car involved in the kidnapping of] Ryan Sampson" before his murder, and he maintains that it was inadmissible because it "was inherently a tainted identification." *Id.*

[21] Due process of law under the Fourteenth Amendment requires suppression of testimony concerning a pre-trial identification when the procedure employed is impermissibly suggestive. *Harris v. State*, 716 N.E.2d 406, 410 (Ind. 1999). Such procedures are known as "show-up identifications." The admissibility of a show-up identification turns on an evaluation of the totality of the circumstances and whether they lead to the conclusion that the confrontation was conducted in a manner that could guide a witness into making a mistaken

identification. *Gordon v. State*, 981 N.E.2d 1215, 1218 (Ind. Ct. App. 2013).

Our courts consider the following factors in evaluating the admissibility of a

show-up identification:

> (1) the opportunity of the witness to view the criminal at the time
> of the crime,

> (2) the length of initial observation of the criminal,

> (3) lighting conditions,

> (4) distance between the witness and the criminal,

> (5) the witness's degree of attention,

> (6) the accuracy of the witness's prior description of the criminal,

> (7) the level of certainty demonstrated by the witness, and

> (8) any identifications of another person.

*Id.*

[22]     Emerson's contention on this issue fails for two reasons.  First, Emerson cites to a single page of the trial transcript, and nothing on that page indicates that officers employed an impermissibly suggestive procedure when they asked Moorman's brother to identify the car used in the kidnapping.  Second, Emerson does not direct us to any authority to support his assertion that a "show-up identification" of a car, as opposed to a defendant, is inadmissible. We cannot say that Emerson's trial counsel's performance was deficient when she did not move to suppress this evidence.

[23] In sum, Emerson has not demonstrated that he was denied the effective assistance of his trial counsel. The post-conviction court did not err when it denied his petition for post-conviction relief.

[24] Affirmed.

Pyle, J., and Altice, J., concur.